DA06-0202

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 119

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

ANDREW BROTHERTON,

        Defendant and Appellant.


APPEAL FROM:    District Court of the Twentieth Judicial District,
                     In and For the County of Sanders, Cause No. DC-2005-31
                     Honorable C. B. McNeil, Presiding Judge


COUNSEL OF RECORD:

       For Appellant:

            Noel K. Larrivee, Attorney at Law, Dayton, Montana

       For Appellee:

            Hon. Mike McGrath, Montana Attorney General, Micheal S. Wellenstein,
            Assistant Attorney General, Helena, Montana

            Robert Zimmerman, Sanders County Attorney, Thompson Falls, Montana


                  Submitted on Briefs:  January 4, 2007

                           Decided:  April 9, 2008


Filed:

                              Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Andrew Brotherton appeals two conditions imposed on his sentence by the District Court for the Twentieth Judicial District, Sanders County. We affirm in part and reverse in part.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 The State charged Brotherton by information on August 11, 2005, with criminal possession of dangerous drugs, a felony, in violation of § 45-9-102, MCA (Count I); criminal distribution of dangerous drugs, a felony, in violation of § 45-9-101, MCA (Count II); criminal possession of dangerous drugs with intent to distribute, a felony, in violation of § 45-9-103, MCA (Count III); criminal possession of drug paraphernalia, a misdemeanor, in violation of § 45-10-103, MCA (Count IV); and driving while license suspended or revoked, a misdemeanor, in violation of § 61-5-212, MCA (Count V). The facts underlying these offenses occurred on or about August 1, 2005.

¶3 Brotherton initially pleaded not guilty. Shortly thereafter, he voluntarily enrolled in a 45-day, inpatient chemical-dependency program, which he completed successfully. The parties ultimately entered into a plea agreement under § 46-12-211(1)(b), MCA, wherein Brotherton agreed to plead guilty to Count III (criminal possession of dangerous drugs with intent to distribute) and the State, in return, agreed that the court should defer imposition of sentence for a period of 18 months and place Brotherton on supervised probation. In addition, the State agreed to dismiss the remaining counts. The District Court accepted the plea agreement and Brotherton's guilty plea on December 13, 2005, and ordered a presentence investigation.

¶4    A probation/parole officer with the Department of Corrections ("DOC") conducted the presentence investigation and filed a report ("PSI") on February 7, 2006. Among other things, the PSI recited Brotherton's background, his criminal history, and the circumstances of the offense. According to the PSI, Brotherton was 28 years old at the time of his offense. The PSI further stated that on or about August 1, 2005, Brotherton "knowingly had in his possession a Dangerous Drug, marijuana," and he traveled to a specified address "with the intent to distribute the dangerous drug, marijuana." This was his first felony conviction, though he previously had been arrested in California for driving while in possession of dangerous drugs. In addition, he was cited for a number of traffic infractions in Montana during the mid- to late-90s, though none of these were alcohol- or drug-related (they involved nighttime speeding, reckless driving, and no insurance).

¶5    Brotherton also had a significant history of chemical use. He first used marijuana at age 15 and began using it on a regular basis at age 17. Also at age 17, he first used cocaine and methamphetamine. At age 21, he began abusing methamphetamine with such frequency that he lost 50 pounds and ended up with sinus and dental problems, and he sold drugs to pay for his habit. He joined the United States Army Reserve in 1995 and was discharged 13 months later after testing positive for drugs. According to the probation/parole officer's investigation, Brotherton "has lost freedom, a marriage, and self respect as a result of his abuse of drugs and the behaviors he engaged in to support his habit. He is now clean and engaged in the family business. Should [Brotherton] continue with his present course his future is assured."

¶6 The probation/parole officer recommended 23 conditions of probation in the PSI. At issue on this appeal are Conditions 12 and 21, which stated as follows:

> 12. The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale. He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer.
> . . . .
> 21. The Defendant will not enter any casinos or play any games of chance.

¶7 At the February 14, 2006 sentencing hearing, Brotherton and the State indicated that they had received copies of the PSI and did not have any additions or corrections to make to it. But Brotherton objected to Conditions 12 and 21 on the ground that there was no nexus between either of these conditions and his conviction of criminal possession of dangerous drugs with intent to distribute. He moved the court to delete both conditions. The State objected, arguing that "when a person drinks their inhibitions are lowered and they are more susceptible to suggestions from their friends, such as smoking marijuana. And it's only for a period of 18 months. . . . We think it's in his best interest."

¶8 The District Court denied Brotherton's motion and sentenced him in accordance with the plea agreement. In addition, the court incorporated the 23 conditions recommended in the PSI. The court entered written judgment on March 6, 2006, and an amended judgment (to correct two clerical errors) on April 3, 2006. This appeal followed.

## ISSUE

¶9 Brotherton contends that the District Court erred in imposing Condition 12 (the alcohol/intoxicants condition) and Condition 21 (the gambling condition). The State

4

concedes that the District Court erred in imposing Condition 21 and agrees with Brotherton that we should grant his request to vacate that condition. Accordingly, the sole issue on appeal is whether the District Court erred in imposing Condition 12.

**STANDARD OF REVIEW**

¶10    In *State v. Ashby*, 2008 MT 83, ___ Mont. ___, ___ P.3d ___, we announced a new standard of review applicable to challenges to the legality and/or propriety of sentencing conditions. First, we review the condition for legality. *Ashby*, ¶ 9. A sentencing condition is illegal if the sentencing court lacked statutory authority to impose it, if the condition falls outside the parameters set by the applicable sentencing statutes, or if the court did not adhere to the affirmative mandates of the applicable sentencing statutes. *See State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, ¶ 15, ___ P.3d ___, ¶ 15; *see also e.g. State v. Grindheim*, 2004 MT 311, ¶ 54, 323 Mont. 519, ¶ 54, 101 P.3d 267, ¶ 54; *State v. Meyers*, 2007 MT 230, ¶ 21, 339 Mont. 160, ¶ 21, 168 P.3d 645, ¶ 21. This determination is a question of law and, as such, our review of the condition's legality is de novo. *Stephenson*, ¶ 15. Second, we review the reasonableness of the sentencing condition for an abuse of discretion.[1] *Ashby*, ¶ 9. A sentencing court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice. *See State v. Ruiz*, 2005 MT 117, ¶ 22, 327 Mont. 109, ¶ 22, 112 P.3d 1001, ¶ 22; *State v. Burke*, 2005 MT 250, ¶ 11, 329 Mont. 1, ¶ 11, 122 P.3d 427, ¶ 11.

---

[1] This second prong does not apply to conditions that are mandated by statute. *See e.g.* § 46-18-206, MCA. With such conditions, there is no exercise of discretion by the sentencing court and our review, accordingly, is for legality only.

## DISCUSSION

¶11 Sentencing courts have exclusive authority to impose criminal sentences. *See* § 46-18-103, MCA ("All sentences under this chapter shall be imposed exclusively by the judge of the court."). However, a sentencing court's authority to impose a criminal sentence derives from the law; it is not inherent. *See State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, ¶ 41, 133 P.3d 206, ¶ 41 ("A district court's authority in sentencing a criminal defendant is defined and constrained by statute, and the court has no power to impose a sentence in the absence of specific statutory authority."); *State v. Hatfield*, 256 Mont. 340, 346, 846 P.2d 1025, 1029 (1993) ("We have long held that a district court has no power to impose a sentence in the absence of specific statutory authority."). Thus, a sentence is legal only if it is authorized by applicable sentencing statutes and imposed by the sentencing court pursuant to those statutes. *See Stephenson*, ¶¶ 15, 22.

¶12 The Montana Code contains a number of provisions authorizing or requiring sentencing courts to impose conditions on sentences. *See e.g.* §§ 46-18-201(4), -202(1), MCA (authorizing conditions that are reasonable and necessary for rehabilitation or for the protection of the victim or society); §§ 46-18-206, -255, MCA (mandating certain conditions under specified circumstances); *see also* § 46-23-1001(4), MCA (defining "probation" as the release of a defendant "subject to conditions imposed by the court and subject to the supervision of the [DOC] upon direction of the court"); § 46-23-1011(1), MCA (instructing the DOC to supervise probationers during their probation period "in accord with the conditions set by a sentencing judge").

¶13 In addition, the Code authorizes the DOC to "adopt rules for the conduct of persons placed on . . . probation, except that the department may not make any rule conflicting with . . . conditions of probation imposed by a court." Section 46-23-1002(3), MCA. The DOC has promulgated a number of such rules, including complying with all laws; seeking and maintaining employment; obtaining permission from the probation officer before changing employment, changing place of residence, or leaving the jurisdiction; submitting written monthly reports to the officer; not owning, possessing, or being in control of a firearm or deadly weapon; and submitting to a search of his/her person, vehicle, or residence by the officer upon reasonable cause. *See generally* Admin. R. M. 20.7.1101(1)-(8) (1995). The DOC may recommend these rules as conditions of probation, *see* § 46-23-1011(4)(a), MCA, and the recommended conditions, if they satisfy the applicable sentencing statutes, may in turn be incorporated by the court in the sentencing order, *see* § 46-18-801(1), MCA; *Stephenson*, ¶¶ 15, 22.

¶14 The alcohol/intoxicants condition at issue here is not explicitly mandated in the Code; thus, the statutory authority for this condition would be §§ 46-18-201(4) and -202(1)(f), MCA (2005). The former authorizes a sentencing judge, when deferring imposition of sentence or suspending all or a portion of execution of sentence, to impose upon the offender "any reasonable restrictions or conditions." Section 46-18-201(4), MCA. "Reasonable restrictions or conditions" include those enumerated in § 46-18-201(4)(a)-(m), MCA (2005), *as amended at* § 46-18-201(4)(a)-(n), MCA (2007), as well as those which the judge considers "necessary for rehabilitation or for the protection of the victim or society," § 46-18-201(4)(n), MCA (2005), *recodified at*

§ 46-18-201(4)(o), MCA (2007). Similarly, § 46-18-202(1)(f), MCA, authorizes a sentencing judge to impose on a sentence any limitation "reasonably related to the objectives of rehabilitation and the protection of the victim and society." *See also* § 46-18-801(1), MCA ("Conviction of an offense does not deprive the offender of a civil or constitutional right, except as provided in the Montana constitution or as specifically enumerated by the sentencing judge as a necessary condition of the sentence directed toward the objectives of rehabilitation and the protection of society.").

¶15     In *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, we held that in order to be "reasonably related to the objectives of rehabilitation and the protection of the victim and society," a sentencing limitation or condition must have "some correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11; *accord State v. Malloy*, 2004 MT 377, ¶ 8, 325 Mont. 86, ¶ 8, 103 P.3d 1064, ¶ 8. Based on *Ommundson* and *Malloy*, Brotherton argues that Condition 12 must be stricken because it is "unrelated to the offense for which Brotherton was convicted – possession of dangerous drugs." In this regard, he points out that "there is not any reference whatsoever [in the PSI] that Brotherton abused alcohol, or has every [sic] been involved in any improper use of alcohol." He also notes that he has openly admitted to involvement with marijuana, cocaine, and methamphetamine in the past and that he was treated for abusing *drugs*, not alcohol, in the chemical-dependency program. Simply put, he contends that there is nothing in his charged offense or personal history that indicates any misuse of alcohol.

8

¶16   We recently modified our *Ommundson* test in *Ashby* following numerous challenges to, and our consideration of arguments for and against, the imposition of "stock" or "standard" conditions of sentence recommended by the DOC or by probation/parole officers in their presentence investigation reports.  For the most part, these challenges involved conditions imposing alcohol, gambling, and casino restrictions. Although a number of sentencing courts have characterized these conditions as "stock" or "standard" conditions, this characterization is accurate only in the sense that, in recent years, the conditions have been recommended by probation/parole officers as a matter of course in their presentence investigation reports.  True "stock" or "standard" conditions are those which have been legislatively authorized; and the alcohol, gambling, casino, and other such restrictions addressed in *Ashby* are not contained in any such list of "stock" or "standard" conditions in the Montana Code.  *See Ashby*, ¶ 23.

¶17   We held in *Ashby* that "a sentencing judge may impose a particular condition of probation so long as the condition has a nexus to either the offense for which the offender is being sentenced, or to the offender himself or herself."  *Ashby*, ¶ 15.  This test is based on the requirements set forth in §§ 46-18-201(4) and -202(1)(f), MCA, that the condition be reasonable and necessary for rehabilitation or for the protection of the victim and society, *see Ashby*, ¶¶ 13-14; *Ommundson*, ¶¶ 5, 11, and the test applies to all conditions which purport to be authorized by these statutes, i.e., conditions which are not explicitly mandated by law elsewhere in the Code to be imposed on sentences.

¶18   In modifying our "nexus" test to allow consideration of the characteristics of the *offender* as well as the *offense* itself, we acknowledged two important concerns.  On one

9

hand, confining the sentencing court's ability to craft probation conditions based solely on the condition's connection to the underlying offense ignores the fact that every sentence is, to a large extent, sui generis—in any given case, the imposition of a particular condition may be appropriate based on concerns unique to the individual defendant, regardless of the nature of the crime committed. On the other hand, and conversely, the routine imposition of common conditions, such as those prohibiting alcohol use, gambling, or entering casinos, sweeps too broadly—in any given case, the imposition of these types of conditions may *not* be appropriate based on the individual defendant or the underlying offense.

¶19 Our *Ashby* test allows a sentencing court discretion to craft conditions of sentence appropriate to the management of probationers generally—e.g., requiring the probationer to obey all laws, to stay in contact with his or her probation officer, and not to leave the jurisdiction without first obtaining permission from the probation officer. Such conditions are so intrinsically applicable to anyone who has been placed on probation that their imposition will always be appropriate. But our *Ashby* test also requires the court to individualize its exercise of discretion so as to impose conditions that have some correlation or connection either to the underlying offense or to the unique background and characteristics of the individual offender. Moreover, we cautioned in *Ashby* that courts may impose offender-related conditions only in those cases in which the history or pattern of conduct to be restricted (e.g., alcohol or drug abuse) is "recent, and significant or chronic." *Ashby*, ¶ 15. "A passing, isolated, or stale instance of behavior or conduct

10

will be insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation." *Ashby*, ¶ 15.

¶20    Accordingly, in the case at hand, we must consider whether Condition 12—which prohibits Brotherton from possessing or consuming alcohol/intoxicants and from entering any place where intoxicants are the chief item of sale, and which requires him to submit to testing for drugs or alcohol as requested by his probation officer—has a nexus to his offense of criminal possession of dangerous drugs with intent to distribute or is properly individualized, i.e., consistent with Brotherton's unique background and characteristics.

¶21    The State offers a number of nonindividualized grounds for affirming the imposition of Condition 12 in this case. For instance, the State asserts that "[a]lcohol lowers inhibitions and the ability to think rationally." The State also opines that "[p]eople often mix alcohol with drugs." Such generalizations, however, are wholly insufficient to show that Condition 12 has a nexus to Brotherton's offense or his unique background and characteristics. Indeed, if these general propositions were sufficient to sustain a no-alcohol condition, then such a condition would be justified in every case. We reject the suggestion that a no-alcohol condition falls under the rubric of "general management" of probationers.

¶22    That aside, the State also provides a number of individualized justifications— related to Brotherton's unique background and characteristics—for Condition 12. The State offers the rather ominous prediction that use of alcohol by Brotherton would be "a recipe for disaster." As support for this assertion, the State points out that Brotherton has used illicit drugs since he was 15 and has sold drugs to pay for his addiction. In addition,

11

the State asserts that Brotherton is "a recovering drug addict" who "clearly has a chemical dependency problem." The State argues that if Brotherton is allowed to drink alcohol, "he will become more susceptible to the temptation to again use drugs," or "there is a real danger that [he] will simply replace his addiction for illegal drugs with the legal drug of alcohol."

¶23 We are persuaded by the State's argument. Brotherton has a significant history of chemical dependency. He began using illicit drugs at age 15 and has continued to do so up through the instant offense (which was committed at age 28). He has sold drugs to fund his addiction, and the instant offense involved possession of dangerous drugs with intent to distribute. As a result of his drug abuse (methamphetamine in particular) and the behaviors he engaged in to support his habit, he has not only suffered serious physical consequences, but has also (according to the PSI) "lost freedom, a marriage, and self respect." At the time of sentencing, he had recently completed a chemical-dependency program, and the probation/parole officer concluded that if he "continue[d] with his present course his future is assured." Finally, we agree with the State's thesis that use of alcohol, within the context of Brotherton's chronic abuse of drugs, could impede his rehabilitation. We reach this conclusion based on Brotherton's significant history of substance abuse and the reasonable possibility that, in the absence of Condition 12, he may substitute one substance (alcohol) for another (drugs).

¶24 For the foregoing reasons, and pursuant to our decision in *Ashby*, we conclude that Condition 12 has a sufficient nexus to Brotherton's unique background and characteristics. Thus, we hold that Condition 12 is a reasonable restriction necessary for

12

Brotherton's rehabilitation and, as such, is legal under §§ 46-18-201(4) and -202(1)(f), MCA. Moreover, in light of the factual circumstances of this case, we conclude that the District Court did not abuse its discretion in imposing this condition.

## CONCLUSION

¶25    We reverse the District Court's imposition of Condition 21 (the gambling condition) and remand this matter to the District Court with instructions to strike that condition from Brotherton's sentence. We affirm the District Court's judgment in all other respects.

¶26    Affirmed in part, reversed in part, and remanded for further proceedings consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ JIM RICE
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS

13