

DA 07-0147

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 185

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHRISTOPHER GREENSWEIGHT,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 2006-276
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

        Brian C. Smith, Public Defender, Missoula, Montana

     For Appellee:

        Hon. Mike McGrath, Montana Attorney General; Mark W. Mattioli,
Assistant Attorney General, Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney; Patricia Bower,
Deputy County Attorney, Missoula, Montana

                Submitted on Briefs:  February 20, 2008

                         Decided:  May 29, 2008

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Christopher Greensweight challenges four conditions imposed on his sentence by the District Court for the Fourth Judicial District, Missoula County. We affirm in part, reverse in part, and remand with instructions.

## BACKGROUND

¶2 Greensweight took approximately $1,400 from his employer, Hastings, over the course of several weeks in April and May 2006. Evidently, he entered a number of "fake refunds" and kept the cash in order to pay his rent and various bills. On June 16, 2006, the State charged Greensweight with theft (common scheme), a felony, in violation of § 45-6-301, MCA. Thereafter, the parties entered into a plea agreement under § 46-12-211(1)(b), MCA, wherein Greensweight agreed to plead guilty to the offense as charged in the Information and the State agreed to recommend a three-year deferred imposition of sentence conditioned on Greensweight's completion of 100 hours of community service and the payment of restitution to Hastings. In addition, the State reserved the right to recommend other "reasonable conditions of probation."

¶3 The District Court accepted Greensweight's guilty plea on August 31, 2006, and ordered a presentence investigation. A probation/parole officer with the Department of Corrections conducted the investigation and filed a report ("PSI"), which recited Greensweight's background and criminal history, the circumstances of the offense, the amount of restitution claimed by Hastings, and the officer's sentencing recommendations. According to the PSI, Greensweight was 26 years old at the time of the theft. This was his first felony offense, but he had a prior conviction in May 2002 for criminal possession

2

of drug paraphernalia, for which he was given a six-month suspended sentence and was placed on misdemeanor supervision. Notably, he violated the conditions of his probation on several occasions due to continued marijuana use and failure to complete community service. But he eventually completed this sentence in November 2002.

¶4　With respect to chemical use, Greensweight reported that he first tried alcohol when he was 16 years old but that his alcohol use never progressed or became problematic. He stated that he consumes alcohol "extremely rarely. I don't like alcohol at all." In contrast, Greensweight disclosed a history of drug abuse and chronic marijuana use. Specifically, he stated that he began smoking marijuana at age 16 and that marijuana is his drug of choice. He reported daily use of marijuana and admitted that he had last used marijuana the night before the change-of-plea hearing for the instant offense. In addition, the probation/parole officer noted that both urinalysis tests on samples obtained from Greensweight prior to sentencing came back positive. We also note that he admitted during the sentencing hearing that if tested that day, the result would come back positive.

¶5　Greensweight acknowledged use of hash, mushrooms, and LSD, and he estimated that he used methamphetamine for approximately six months in 2001, which he described as "one of the ugliest times in my life." Greensweight reported that he had injected methamphetamine on one occasion. Apparently after this incident, he stopped using methamphetamine by moving back home with his parents. He completed outpatient chemical-dependency treatment at Turning Point while on misdemeanor supervision (in 2002).

¶6    The probation/parole officer recommended a number of probation conditions on Greensweight's three-year deferred sentence, including the following:

- "The Defendant shall not possess or consume intoxicants/alcohol, nor will he enter any place intoxicants are the chief item of sale. He will submit to routine or random Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his Probation & Parole Officer."

- "The Defendant shall obtain a chemical dependency evaluation by a state approved treatment provider/facility, at his own expense, and follow all recommendations of said evaluation."

- "The Defendant shall attend AA/NA at the discretion of his Probation Officer." ("AA/NA" is shorthand for Alcoholics Anonymous/Narcotics Anonymous.)

- "The Defendant shall participate in any counseling as recommended by probation officer, to include Mental Health counseling."

¶7    Greensweight objected to each of these recommended conditions at the November 9, 2006 sentencing hearing on the ground that they were not reasonably related to his offense of theft. With respect to the no-intoxicants condition, the District Court concluded that "it may be related to the offense." Nevertheless, the court decided that so long as Greensweight remained current with his restitution payments and committed no alcohol-related offenses (e.g., DUI), he would not be prohibited from consuming alcohol. But, the court stated, "the probation officer has the discretion to kick [the condition] in" if Greensweight is not in compliance with the restitution payment schedule or if he violates the law by committing an alcohol-related offense. The court explained that "it's the goal of the court to get him through the judgment as quickly as possible. If he's drinking or getting additional offenses, he's not going to be making his restitution on time."

4

¶8     The court did impose the drug-testing condition, however, noting simply that "illegal or nonprescribed drugs can be tested for, and they're going to be monitored." Later, the court provided the following additional justification: "[T]his is a theft of money, and marijuana is not free and . . . the money very well could have been used to buy marijuana. So that's an additional reason why the illegal-drug-testing provisions are included."

¶9     With respect to the condition requiring Greensweight to obtain a chemical-dependency evaluation, the court observed that Greensweight had violated the conditions of his release by using marijuana while on bail. The court also noted that "we do have a lot of folks on probation who are not successful based upon their use of illegal substances, including THC." Thus, the court imposed this condition. Likewise, the court imposed the AA/NA condition, but the court stated that it would "broaden [the condition] to an appropriate, self-help group or other treatment program, other recommended treatment program, and by 'recommended' I mean by a licensed professional." Finally, the court also overruled Greensweight's objection to the counseling condition, explaining that it was "required for his successful rehabilitation."

¶10     In its written judgment, entered February 8, 2007, the District Court ordered that imposition of sentence be deferred for a period of three years. The court imposed a number of conditions, including the following:

> 14.  The Defendant shall obtain a chemical dependency evaluation by a state approved treatment provider/facility, at his own expense, and follow all recommendations of said evaluation.

15. If Defendant fails to make restitution payments in a timely fashion, the probation officer has the discretion to implement the following condition: The Defendant shall not possess, use or drink intoxicants and/or alcohol, nor will he enter any place intoxicants are the chief item of sale, to include all bars and casinos. He will submit to Breathalyzer testing or bodily fluid testing for drugs or alcohol as requested by his supervising officer, on a random or routine basis.

16. The defendant shall attend AA/NA at the discretion of his Probation Officer and attend any approved treatment program for drug use addiction.

17. The defendant will participate in any counseling as recommended by probation officer, to include mental health counseling.

¶11 Greensweight now appeals, challenging the District Court's imposition of each of these conditions.

## ISSUES

¶12 Greensweight raises two issues on appeal, which we restate as follows:

1. Are Conditions 14, 15, 16, and 17 illegal or unreasonable?

2. Does random drug- and alcohol-testing (Condition 15), without reasonable suspicion, exceed the scope of a permissible probation search?

## STANDARD OF REVIEW

¶13 We review challenges to sentencing conditions under a two-prong standard. First, we review the challenged condition for legality. *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, ¶ 9, 179 P.3d 1164, ¶ 9. A sentencing condition is illegal if the sentencing court lacked statutory authority to impose it, if the condition falls outside the parameters set by the applicable sentencing statutes, or if the court did not adhere to the affirmative mandates of the applicable sentencing statutes. *State v. Brotherton*, 2008 MT 119, ¶ 10,

342 Mont. 511, ¶ 10, 182 P.3d 88, ¶ 10; *see also State v. Stephenson*, 2008 MT 64, ¶ 15, 342 Mont. 60, ¶ 15, 179 P.3d 502, ¶ 15.  This determination is a question of law and, as such, our review of the condition's legality is de novo.  *Brotherton*, ¶ 10; *Stephenson*, ¶ 15.  Second, we review the reasonableness of the challenged condition for an abuse of discretion (unless the condition is mandated by statute, in which case there is no exercise of discretion by the sentencing court).  *Ashby*, ¶ 9; *Brotherton*, ¶ 10.  A sentencing court abuses its discretion when it acts arbitrarily without employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice.  *Brotherton*, ¶ 10.

## DISCUSSION

¶14     *Issue 1.  Are Conditions 14, 15, 16, and 17 illegal or unreasonable?*

¶15     A sentencing court's authority to impose a criminal sentence derives from the law; it is not inherent.  *See State v. Hicks*, 2006 MT 71, ¶ 41, 331 Mont. 471, ¶ 41, 133 P.3d 206, ¶ 41; *State v. Hatfield*, 256 Mont. 340, 346, 846 P.2d 1025, 1029 (1993).  Therefore, a sentencing condition is legal only if it is authorized by applicable sentencing statutes.  *See Brotherton*, ¶¶ 11-13.

¶16     The conditions at issue here are not explicitly mandated by law in the Montana Code; thus, the statutory authority for the conditions would be §§ 46-18-201(4) and -202(1)(f), MCA (2005).  The former authorizes a sentencing judge, when deferring imposition of sentence or suspending all or a portion of execution of sentence, to impose upon the offender "any reasonable restrictions or conditions."  Section 46-18-201(4), MCA.  "Reasonable restrictions or conditions" include those enumerated in

7

§ 46-18-201(4)(a)-(m), MCA (2005), *as amended at* § 46-18-201(4)(a)-(n), MCA (2007), as well as those which the judge considers "necessary for rehabilitation or for the protection of the victim or society," § 46-18-201(4)(n), MCA (2005), *recodified at* § 46-18-201(4)(o), MCA (2007). Similarly, § 46-18-202(1)(f), MCA, authorizes a sentencing judge to impose on a sentence any limitation "reasonably related to the objectives of rehabilitation and the protection of the victim and society." In *State v. Ommundson*, 1999 MT 16, 293 Mont. 133, 974 P.2d 620, we held that in order to be "reasonably related to the objectives of rehabilitation and the protection of the victim and society," a sentencing limitation or condition must have "some correlation or connection to the underlying offense for which the defendant is being sentenced." *Ommundson*, ¶ 11.

¶17 Relying on *Ommundson* and its progeny, Greensweight argues that Conditions 14, 15, 16, and 17 are not reasonably related, and have no nexus, to his offense of theft. However, we recently concluded in *Ashby* that a sentencing condition may be reasonably related to the objectives of rehabilitation and the protection of the victim and society if it has a connection to the *offender*. *See Ashby*, ¶ 15. Thus, we held that a sentencing judge may impose a particular condition of probation pursuant to §§ 46-18-201(4) and -202(1)(f), MCA, if the condition has a nexus either to the offense for which the offender is being sentenced or to the offender himself or herself. *Ashby*, ¶ 15; *see also Brotherton*, ¶ 17. This test allows a sentencing court discretion to craft conditions of sentence appropriate to the management of probationers generally, but also requires the court to individualize its exercise of discretion so as to impose conditions that have some

8

correlation or connection to the underlying offense or to the unique background and characteristics of the individual offender. However, with respect to offender-related conditions, we cautioned in *Ashby* that courts may impose such conditions only where the history or pattern of conduct to be restricted (e.g., alcohol or drug abuse) is "recent, and significant or chronic. A passing, isolated, or stale instance of behavior or conduct will be insufficient to support a restrictive probation condition imposed in the name of offender rehabilitation." *Ashby*, ¶ 15.

¶18 In the case at hand, therefore, we must consider whether each of Conditions 14, 15, 16, and 17 has a nexus either to Greensweight's offense of theft or to his unique background and characteristics.

**Condition 14**

¶19 Under Condition 14, Greensweight is required to obtain a chemical-dependency evaluation by a state-approved treatment provider or facility, at his own expense, and to follow all recommendations of said evaluation. Greensweight challenges this condition on the ground that it does not have any correlation or nexus to his offense. While there indeed is no evidence in the record that his offense involved chemical use, he did admit that he took the money from Hastings in order to pay his rent and various bills, and he also reported to the probation/parole officer that he used marijuana—his drug of choice—on a daily basis. It reasonably may be inferred from these facts that money which otherwise would have gone to pay rent and the various bills was being used to fund his marijuana habit. In other words, the theft from Hastings likely was prompted, in part, by

9

his daily use of marijuana. Thus, we disagree with Greensweight's contention that the chemical-dependency condition is unrelated to his offense.

¶20 An even stronger argument for this condition exists based on Greensweight's unique background and characteristics. There is substantial evidence in the record that he has a recent and chronic history of drug abuse. As recited above, he began smoking marijuana at age 16 and he used marijuana on a daily basis, including the night before the change-of-plea hearing for the instant offense and at various times leading up to the sentencing hearing. Moreover, he violated the conditions of his 2002 misdemeanor probation on several occasions due in part to his continued marijuana use. Finally, Greensweight's experimentation with hash, mushrooms, LSD, and methamphetamine during this same time period bolsters the conclusion that he has a serious chemical-dependency problem.

¶21 For these reasons, we conclude that Condition 14 has a nexus to Greensweight's offense and to his unique background and characteristics and, thus, is legal. We also conclude that requiring him to obtain a chemical-dependency evaluation and to follow all recommendations of said evaluation is abundantly reasonable in light his recent and chronic history of drug abuse.

**Condition 16**

¶22 We next consider Condition 16 (the AA/NA condition). As a preliminary matter, it is necessary to address a discrepancy between the District Court's oral pronouncement of this condition and the articulation of the condition in the court's written judgment. As recited in the PSI, this condition read: "The Defendant shall attend AA/NA at the

discretion of his Probation Officer." At the sentencing hearing, the court indicated that the condition would be imposed, but the court stated that "I'll broaden that to an appropriate, self-help group or other treatment program, other recommended treatment program, and by 'recommended' I mean by a licensed professional." A fair reading of the court's statement is that the court was requiring Greensweight to attend *either* AA/NA *or* another "appropriate" self-help group or treatment program. Yet, as it appears in the court's written judgment, the condition reads: "The defendant shall attend AA/NA at the discretion of his Probation Officer *and* attend any approved treatment program for drug use addiction" (emphasis added). Because the sentence orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment, *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, ¶ 40, 957 P.2d 9, ¶ 40, we will consider Condition 16 as requiring Greensweight to attend either AA/NA or "an appropriate, self-help group or . . . other recommended treatment program."

¶23 For the same reasons we affirmed Condition 14, we also affirm Condition 16. In light of Greensweight's recent and chronic history of drug abuse, this condition has a nexus to Greensweight's unique background and characteristics. Furthermore, requiring him to attend a self-help group or other treatment program complements the requirement under Condition 14 that he obtain a chemical-dependency evaluation and follow all recommendations of said evaluation. Thus, we hold that the District Court did not abuse its discretion in imposing this condition.

**Condition 15**

¶24    Turning now to Condition 15, Greensweight is prohibited from possessing, using, or drinking intoxicants and/or alcohol and from entering any place where intoxicants are the chief item of sale, including all bars and casinos. As noted above, these prohibitions arise only if Greensweight fails to comply with the restitution payment schedule or if he commits an alcohol-related offense. Furthermore, if either of these events occurs, imposition of the condition is left to the probation officer's discretion.

¶25    We note here that Greensweight has not questioned the propriety of allowing the no-intoxicants condition to "kick in" only if he fails to comply with the restitution payment schedule or commits an alcohol-related offense. Nor has he questioned the propriety of delegating to his probation officer the discretion to impose the condition should either of these events occur. *Cf. State v. Pritchett*, 2000 MT 261, ¶ 16, 302 Mont. 1, ¶ 16, 11 P.3d 539, ¶ 16 (holding that the sentencing court did not have authority to leave the determination of the amount, method, and time of payment of restitution to the discretion of the probation officer); *State v. Hatfield*, 256 Mont. 340, 346-47, 846 P.2d 1025, 1029 (1993) (holding that a sentencing court's authority to impose conditions that it considers necessary for rehabilitation does not allow for the delegation of power and discretion to incarcerate for extended periods of time from the court to a probation officer). Thus, we will not address these matters further. Rather, we will consider only whether a no-intoxicants condition on Greensweight's sentence is legal and reasonable.

¶26    Greensweight contends that the condition is invalid because his offense did not involve alcohol, because the PSI does not indicate an alcohol problem, and because the condition does not bear a reasonable relation to his rehabilitation and the protection of

society from further incidents of theft on Greensweight's part. The State counters that Greensweight's substance abuse is not limited to marijuana—which the record confirms—and that "there is no reason to think that Greensweight's addictive tendencies are somehow immune to alcohol abuse/dependency." Rather, according to the State, "there is every reason to believe that if alcohol is not a problem for Greensweight now, it soon will be."

¶27 We addressed a similar argument by the State in *Brotherton* and concluded that use of alcohol, within the context of Brotherton's chronic abuse of drugs, could impede his rehabilitation. We reached this conclusion based on Brotherton's significant history of substance abuse and the reasonable possibility that, in the absence of the no-intoxicants condition, he might substitute one substance (alcohol) for another (drugs). *See Brotherton*, ¶ 23; *cf. State v. Corbin*, 2008 MT 146, ¶ 9, ___ Mont. ___, ¶ 9, ___ P.3d ___, ¶ 9 (concluding that while Corbin's offense of felony theft was not related in any way to alcohol or drug use, his alcohol- and drug-related history and conduct supported the imposition of a no-alcohol condition); *In re D.A.S.*, 2008 MT 168, ¶ 12, ___ Mont. ___, ¶ 12, ___ P.3d ___, ¶ 12 (concluding that while alcohol and drugs were not present during the commission of D.A.S.'s crime, the no-alcohol and no-drugs conditions were reasonably related to D.A.S. and his individual rehabilitation, as contemplated by *Ashby*).

¶28 Likewise, as discussed above, Greensweight's substance abuse is both recent and chronic. Furthermore, as the State points out, although Greensweight completed outpatient chemical-dependency treatment at Turning Point while on misdemeanor supervision in 2002, he evidently resumed using marijuana on a daily basis after this

program, which suggests a significant chemical-dependency problem. Finally, although there is no evidence that Greensweight has abused alcohol, we conclude that in light of his significant chemical-dependency problem, there is a reasonable possibility that, in the absence of the no-intoxicants condition, he may substitute one substance (alcohol) for another (drugs). *Brotherton*, ¶ 23.

¶29 Accordingly, we hold that the no-intoxicants condition has a nexus to Greensweight's unique background and characteristics and, thus, is legal. We also conclude that prohibiting Greensweight from possessing, using, or drinking intoxicants and/or alcohol and from entering any place where intoxicants are the chief item of sale (should he fall behind in his restitution payments or commit an alcohol-related offense) is a reasonable restriction necessary for his rehabilitation.

¶30 Also under Condition 15, Greensweight must submit to Breathalyzer testing or bodily-fluid testing for drugs (and alcohol, if applicable) as requested by his probation officer, on a random or routine basis. He contends that this condition is illegal because it is not reasonably related to his offense. Notably, however, he acknowledges that a condition requiring testing for drugs "would be appropriate" where the offender was convicted of a drug offense. Extending this principle pursuant to our holding in *Ashby*, we conclude that a drug- and alcohol-testing condition is appropriate where the offender has a recent, and significant or chronic history of chemical dependency, as does Greensweight. Indeed, we affirmed such a condition in *Brotherton*, *Corbin*, and *D.A.S.* Accordingly, we hold that the drug- and alcohol-testing requirement of Condition 15 has

a nexus to Greensweight's unique background and characteristics and is reasonable in light of his history of chemical dependency.

## Condition 17

¶31    Under Condition 17, Greensweight is required to participate in any counseling as recommended by his probation officer, including mental-health counseling. To the extent counseling is required to address Greensweight's chemical-dependency and substance-abuse problems, we affirm this condition for the same reasons we affirmed Conditions 14 and 16. However, as Greensweight points out, the record is devoid of any evidence that he has mental-health issues. Greensweight's stated reason for taking the money from Hastings is simply "[s]tupid judgment." The PSI recites no psychological problems related to his offense or his background. To the contrary, Greensweight's father described Greensweight as creative and gregarious and indicated that "this kind of behavior [namely, taking money from his employer] is not his norm."

¶32    The State all but concedes that there is no evidence in the record of mental-health issues. Instead, the State opines that the District Court may have been "concerned that Greensweight may be masking or medicating an underlying mental health problem." Speculation as to the existence of mental-health issues, however, does not fulfill the State's burden of demonstrating a nexus between the sentencing condition and the offense or the offender. Accordingly, there being no basis for requiring mental-health counseling, this portion of Condition 17 must be stricken.

¶33    ***Issue 2. Does random drug- and alcohol-testing, without reasonable suspicion, exceed the scope of a permissible probation search?***

¶34 As noted above, Greensweight is required under Condition 15 to submit to Breathalyzer testing or bodily-fluid testing for drugs (and alcohol, if applicable) as requested by his supervising officer "on a random or routine basis." Greensweight contends that conditioning his sentence on "random" drug and alcohol testing is illegal. He reasons that such testing constitutes a "search" and that his supervising officer, therefore, must have reasonable cause to believe that Greensweight has violated a no-drug or no-alcohol condition before he or she may require him to submit to the test.

¶35 However, Greensweight's entire argument is premised on the assertion that his offense of theft did not involve drugs or alcohol. In fact, he seems to suggest in his reply brief that random testing of bodily fluids for the presence of drugs or alcohol would be permissible, without reasonable cause, where the probationer committed a crime that involved drugs or alcohol. In light of our holding in *Ashby*, we see no reason not to apply this proposition to cases, such as Greensweight's, where the probationer has a recent, and significant or chronic history of chemical dependency and the sentencing court, on this basis, has imposed a no-drugs or no-alcohol condition. Furthermore, we recognize that where a no-drugs or no-alcohol condition has been imposed, it is reasonable to monitor compliance with this condition by way of "random" testing. Indeed, it would be highly implausible to argue that compliance with a no-drugs or no-alcohol condition could be adequately monitored through scheduled testing.

¶36 We hold, therefore, that Greensweight has not demonstrated that the random nature of the drug- and alcohol-testing requirement of Condition 15 is illegal.

**CONCLUSION**

16

¶37   We affirm the District Court's imposition of Conditions 14, 15, 16, and 17, with the following two exceptions.

¶38   First, we reverse the District Court's imposition of a mental-health-counseling condition, and we instruct the court on remand to revise Condition 17 to comply with this holding. As noted above, Condition 17 is valid to the extent counseling is required to address Greensweight's chemical-dependency and substance-abuse problems. *See* ¶ 31, *supra*.

¶39   Second, we instruct the District Court on remand to revise the AA/NA condition (Condition 16) so that it complies with the court's oral pronouncement of sentence. *See* ¶ 22, *supra*.

¶40   Affirmed in part, reversed in part, and remanded with instructions.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE