DA 10-0608

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 242

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ANGELA KAY O'CONNELL,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 09-166
Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Joslyn Hunt, Chief Appellate Defender; Jennifer A. Hurley, Assistant
Appellate Defender; Helena, Montana

      For Appellee:

            Steve Bullock, Montana Attorney General; Sheri K. Sprigg, Assistant
Attorney General; Helena, Montana

            William E. Fulbright, Ravalli County Attorney; Hamilton, Montana

Submitted on Briefs:  July 27, 2011

Decided:  September 28, 2011

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Angela O'Connell (O'Connell) appeals from the judgment and sentence imposed by the Twenty-First Judicial District, Ravalli County, requiring her to pay lost profits in addition to the replacement value of stolen goods as part of her restitution obligation. She also challenges a sentencing condition that prohibits her from entering bars. The State concedes that the restitution determination was not supported by substantial evidence. We reverse in part and affirm in part and remand for recalculation of restitution. We address the following issues on appeal:

¶2 *1. Did the District Court err by ordering payment of lost profits, in addition to the replacement value of the stolen goods, as part of O'Connell's restitution obligation?*

¶3 *2. Did the District Court abuse its discretion by prohibiting O'Connell from entering bars as a condition of her sentence?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶4 O'Connell and her husband were involved in a theft scheme whereby O'Connell's husband would steal property from a local business and sell the stolen goods for cash. The Hunting Shack, Inc. is a Ravalli County business that buys and refurbishes expended brass bullet casings. O'Connell's husband would sneak into the fenced storage area of The Hunting Shack, collect the casings in containers, roll the containers back under the fence, and load them into O'Connell's vehicle. O'Connell would then drive to a recycling company where her husband would sell the casings as scrap metal. From April

2

to October of 2009, the couple stole 33,815 pounds of expended brass casings and received $32,179.25 in payments from the sale of the casings.

¶5　O'Connell pled guilty to Accountability for Theft (Common Scheme) under §§ 45-2-301 and 45-6-301 (1)(a), MCA (2007),[1] pursuant to a plea agreement. O'Connell's husband was charged with felony theft and sentenced to 10 years in prison for his part in the scheme. O'Connell's Presentence Investigation Report (PSI) revealed that she is an illegal drug user, indulging in marijuana daily without a medical marijuana card and using hard drugs with frequency in the past. The PSI indicated that, although her current use of alcohol is rare, O'Connell had alcohol problems in her teenage years and received a Minor in Possession of Alcohol citation during that time. O'Connell had previously participated in two outpatient chemical dependency programs.

¶6　The District Court imposed a two-year deferred imposition of sentence with various conditions, including prohibitions on entering bars, entering casinos, and on consumption of alcohol. During the oral imposition of sentence, the District Court stated: "With regard to . . . entry into bars, I think it would be extremely unseemly for the Defendant to be . . . having a good time in a bar when she's owing $159,000 to a business that she stole from, and so I will implement those recommendations." In addition, O'Connell was ordered to pay restitution to The Hunting Shack in the amount of $159,606.80, representing both the cost and the lost profits for the stolen brass casings.

---

[1] Although the defendant's acts continued until October 3, 2009, and § 45-6-301, MCA, was amended effective October 1, 2009, the language of the subsection pertinent to the charge here was not revised. The 2007 version of the MCA was in effect when most of the acts in the common scheme occurred.

The amount designated as profits lost on the casings was provided by the manager of The Hunting Shack, with little explanation of how the amount was calculated. O'Connell contests the condition prohibiting her from entering bars and the portion of the restitution amount attributed to The Hunting Shack's lost profits.

**STANDARD OF REVIEW**

¶7 We review factual findings regarding restitution to determine if they are clearly erroneous. *State v. Essig*, 2009 MT 340, ¶ 12, 353 Mont. 99, 218 P.3d 838 (citing *State v. Heath*, 2004 MT 126, ¶ 13, 321 Mont. 280, 90 P.3d 426). Factual findings are clearly erroneous when they are not supported by substantial evidence. *State v. Coluccio*, 2009 MT 273, ¶ 40, 352 Mont. 122, 214 P.3d 1282, (citing *State v. Breeding*, 2008 MT 162, ¶ 11, 343 Mont. 323, 184 P.3d 313). Evidence is substantial if a reasonable mind might accept it as adequate to support a conclusion. *Coluccio*, ¶ 40 (citing *Johnston v. Palmer*, 2007 MT 99, ¶ 26, 337 Mont. 101, 158 P.3d 998). Conclusions of law regarding the measure of restitution are reviewed for correctness. *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, 11 P.3d 539.

¶8 We review probation and sentencing conditions under a two-pronged review. First, we will review de novo the legality of the probation or sentencing conditions. Then, we will review the reasonableness of the conditions for abuse of discretion. *State v. Sadowsky*, 2008 MT 405, ¶ 10, 347 Mont. 192, 197 P.3d 1018; *State v. Stiles*, 2008 MT 390, ¶ 7, 347 Mont. 95, 197 P.3d 966; *State v. Brotherton*, 2008 MT 119, ¶ 10, 342 Mont. 511, 182 P.3d 88; *State v. Ashby*, 2008 MT 83, ¶ 9, 342 Mont. 187, 179 P.3d 1164.

4

**DISCUSSION**

¶9 *1. Did the District Court err by ordering payment of lost profits, in addition to the replacement value of the stolen brass casings, as part of O'Connell's restitution obligation?*

¶10 O'Connell argues that "the district court erred as a matter of law when it determined that lost profits was a proper measure of restitution," and, alternatively, that even if lost profits were proper, the amount awarded was not supported by substantial evidence in this case. O'Connell points to the invoices used by The Hunting Shack's manager in determining the cost of the stolen casings. The manager admitted he used the wrong invoices for the calculation and that those invoices were from different shipments than those from which the casings were stolen. Noting the calculus the manager used for lost profits, O'Connell argues the manager did not explain how the factors that went into the calculus were determined, did not offer testimony regarding the proper sale price of the casings, and did not provide testimony regarding the cost of labor. The manager admitted his figures were based on the assumption that all the stolen casings would have been remanufactured and that he did not account for casings that would be found to be unsuitable for remanufacture.

¶11 To the extent that O'Connell argues lost profits were not a proper measure of restitution as a matter of law, the State argues future lost profits may be an appropriate measure of damages for a restitution award, citing to *State v. Kalal*, 2009 MT 103, ¶ 2, 350 Mont. 128, 204 P.3d 1240. The State also argues that lost profits need not be

5

calculable with precision, citing to *State v. Benoit*, 2002 MT 166, ¶ 29, 310 Mont. 449, 51 P.3d 495 (lost profits are recoverable so long as "the losses were calculated by use of reasonable methods based on the best evidence available under the circumstances.").

¶12　A sentencing court must "require an offender to make full restitution to any victim who has sustained pecuniary loss, including a person suffering an economic loss." Section 46-18-241 (1), MCA.  Pecuniary loss is defined as "all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities . . . ."  Section 46-18-243 (1)(a), MCA.  The definition of pecuniary loss was amended in 2003 to include "the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct."  Section 46-18-243 (1)(b), MCA.  Because the definition of "pecuniary loss" includes damages that could be recovered in a civil action, we look to precedent in tort and contract law to determine the proper measure of restitution.  *Kalal*, ¶ 9.

¶13　In *Stensvad v. Miners and Merchants Bank of Roundup*, 196 Mont. 193, 640 P.2d 1303 (1982), a breach of contract case, we stated that damages for lost profits may be awarded if they are not speculative.  *Stensvad*, 196 Mont. at 206, 640 P.2d at 1310; *Silfvast v. Asplund*, 99 Mont. 152, 161-62, 42 P.2d 452, 456 (1935).  In *Trifad Ent., Inc. v. Anderson*, 2001 MT 227, 306 Mont. 499, 36 P.3d 363, a conversion case, we remanded for determination of damages, including possible damages for "future lost income and profits . . . ."  *Trifad*, ¶ 45.  We have also held that, if the circumstances warrant, "loss of

6

future profits, although often speculative, are recoverable . . . ." *Benoit*, ¶ 29. These cases demonstrate that, as a matter of law, lost profits can be ordered as part of a restitution condition within a criminal sentence.

¶14 However, the State has conceded to O'Connell's alternative argument—that the District Court's determination of lost profits in this matter was based upon speculation and not supported by substantial evidence. Because the casings were timely replaced, there was no evidence the profits of the company were actually affected. Further, the State notes the evidence the manager offered was not sufficient to support the multiplier he used to calculate the lost profits. Thus, the evidence presented was not calculated by use of "reasonable methods based on the best evidence available under the circumstances." *Benoit*, ¶ 29. We reverse the restitution award and remand for recalculation of restitution based upon the replacement value of the casings.

¶15 *2. Did the District Court abuse its discretion by prohibiting O'Connell from entering bars as a condition of her sentence?*

¶16 When a district court defers imposition of sentence, as here, it has authority to impose "any . . . reasonable restrictions or conditions considered necessary for rehabilitation or for the protection of the victim or society." Section 46-18-201 (4)(o), MCA. District courts also have broad authority to order "any . . . limitation reasonably related to the objectives of rehabilitation and the protection of the victim and society." Section 46-18-202 (1)(f), MCA. The condition must have a nexus to either the offender or the offense. *Ashby*, ¶ 15. In order to have a nexus to the offender or offense, this

7

condition must "relate to rehabilitation or protection of society within the particular context of an offender's crime or the unique background, characteristics, or conduct of the offender." *State v. Zimmerman*, 2010 MT 44, ¶ 17, 355 Mont. 286, 228 P.3d 1109.

¶17 O'Connell argues the District Court abused its discretion by imposing the condition prohibiting her from entering bars because she does not have a recent history of alcohol abuse. She argues that neither alcohol nor drugs were related to her theft offense, and therefore, the condition is overly broad. She reasons that the restriction will be detrimental to her ability to gain employment since she will be unable to work in a bar.

¶18 However, O'Connell admits to recent and chronic drug abuse, stating she uses marijuana on a daily basis to self-medicate and provide "relief from my anxiety symptoms," despite having a prescription for anxiety medication. Her PSI states she has a long history of hard drug use, including "a whole lot" of methamphetamines, and use of hash, cocaine, LSD, and mushrooms. O'Connell does not have a medical marijuana card and is prohibited from using illegal drugs as one of her sentencing conditions, which she does not challenge.

¶19 In *Brotherton*, we upheld a condition that prohibited alcohol consumption due to Brotherton's background and characteristics of drug use, including a significant history of illegal drug dependency. *Brotherton*, ¶¶ 23-24 (internal quotations omitted). We were persuaded by the State's argument that "there is a real danger that [he] will simply replace his addiction for illegal drugs with the legal drug of alcohol." *Brotherton*, ¶¶ 22-23. In *State v. Kroll*, 2004 MT 203, 322 Mont. 294, 95 P.3d 717, we upheld

8

conditions that prohibited Kroll from gambling and entering casinos. *Kroll*, ¶¶ 30-31. Kroll's behavior had demonstrated that he was easily lured into money-making schemes, although he had no previous problems with gambling in casinos. Nonetheless, we upheld the casino condition because it bore a "sufficient connection" to his offense and furthered Kroll's rehabilitation. *Kroll*, ¶¶ 30-31; *see also State v. Greensweight*, 2008 MT 185, ¶¶ 26-29, 343 Mont. 474, 187 P.3d 613 (upholding a condition prohibiting alcohol where defendant had a long history of drug use, but little history of alcohol use).

¶20    The principles stated in these cases are equally applicable to O'Connell and the bar condition. O'Connell has a long history of illegal drug use and continues to use on a daily basis. A restriction on entering bars is sufficiently connected to her circumstances and furthers her rehabilitation by preventing her from being in places where alcohol is purveyed, which may lessen the chance that she will replace or supplement her use of illegal drugs with alcohol and thereby hinder her rehabilitation. *See Brotherton*, ¶¶ 22-23. Although the District Court's statement that it was imposing the condition for purposes of appearances was unnecessary, the condition was properly imposed upon O'Connell. *See Ronning v. Yellowstone County*, 2011 MT 79, ¶ 8, 360 Mont. 108, 253 P.3d 818 ("We will not reverse a district court where it reached the right result, although for the wrong reason."). We affirm the condition.

¶21    Reversed in part, affirmed in part, and remanded for further proceedings consistent with this opinion.

/S/ JIM RICE

9

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS