FILED

March 31 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0242

DA 14-0242

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 94

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

MICHAEL L. BARRICK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Fergus, Cause No. DC 2012-49
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Craig R. Buehler, Attorney at Law; Lewistown, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General; C. Mark Fowler, Assistant
Attorney General; Helena, Montana

          Thomas P. Meissner, Fergus County Attorney; Lewistown, Montana

Submitted on Briefs: November 13, 2014
Decided: March 31, 2015

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Michael L. Barrick (Barrick) appeals from the order of the Tenth Judicial District Court, Fergus County, requiring him to pay restitution in the amount of $9,357.14 following his conviction of Cruelty to Animals and Criminal Mischief. We affirm in part and reverse in part.

¶2 We address the following issues on appeal:

¶3 *1. Did the District Court err by ordering Barrick pay restitution to the victims for lost wages?*

¶4 *2. Did the District Court err by ordering Barrick pay restitution for a victim's medical bills?*

¶5 *3. Did the District Court abuse its discretion by denying Barrick's motion to produce records?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶6 On September 20, 2013, a jury convicted Barrick of Criminal Mischief and Cruelty to Animals for fatally shooting the family dog of Brett Tuss, Ann Tuss, and Anika Tuss (collectively, the Tuss Family). Although Barrick and the Tuss Family disagreed as to the circumstances surrounding the animal's death, Barrick acknowledges that he fatally shot the dog.

¶7 During the sentencing phase, the Tuss Family requested restitution in the amount $9,357.14 arising from the loss of the animal and attendant criminal proceedings. Their claim included the replacement cost of the dog, medical bills for Brett Tuss, lost wages for time spent by the Tuss Family cooperating in the prosecution of the offenses, and their travelling expenses associated with the prosecution of the offenses.

2

¶8 In response to the Tuss Family's restitution claim, Barrick filed a motion to produce records, seeking production of all the medical records of Brett Tuss for the last five years; federal income tax returns for Brett and Ann Tuss for the last two years; pay stubs from Ann and Anika Tuss from October 15, 2012; and a release of information to authorize Barrick to obtain Ann and Anika Tuss' employment information. The District Court ultimately denied Barrick's motion to produce records.

¶9 The District Court conducted a restitution hearing at which members of the Tuss Family testified. Brett Tuss testified to the replacement value of the dog, the loss of time he sustained by participating in the prosecution, medical bills he sustained due to the stress of losing the family dog, and traveling expenses incurred in participating in the prosecution. Ann and Anika Tuss similarly testified that they lost wages as a result of leaving work to cooperate in the prosecution of the offenses.

¶10 The District Court determined that Brett Tuss' medical expenses were reasonably related to the offenses committed by Barrick, and that the Tuss Family was entitled to lost wages "for time invested in participating in the prosecution." The District Court ordered that Barrick pay the entire $9,357.14 claimed in restitution.[1]

## STANDARDS OF REVIEW

¶11 We review a district court's factual findings regarding restitution to determine if they are clearly erroneous. *State v. O'Connell*, 2011 MT 242, ¶ 7, 362 Mont. 171, 261 P.3d 1042. Factual findings are clearly erroneous if they are not supported by substantial

---

[1] Brett Tuss was awarded lost wages or income in the amount of $2,300 and Anika Tuss was awarded $368.06. Ann Tuss was awarded $1,925, about which the District Court stated "Ann's claim includes loss of income due to her participation in the prosecution."

3

evidence. *O'Connell*, ¶ 7. Evidence is substantial if a reasonable mind might accept it as adequate to support a conclusion. *State v. Coluccio*, 2009 MT 273, ¶ 40, 352 Mont. 122, 214 P.3d 1282. Conclusions of law regarding the measure of restitution are reviewed for correctness. *State v. Pritchett*, 2000 MT 261, ¶ 18, 302 Mont. 1, 11 P.3d 539.

¶12 We review a district court's order granting or denying discovery for abuse of discretion. *City of Billings v. Peterson*, 2004 MT 232, ¶ 13, 322 Mont. 444, 97 P.3d 532. A district court abuses its discretion when it acts "arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." *Henricksen v. State*, 2004 MT 20, ¶ 29, 319 Mont. 307, 84 P.3d 38 (citations omitted).

¶13 We review a district court's interpretation and construction of a statute de novo. *Dick Irvin, Inc. v. State*, 2013 MT 272, ¶ 18, 372 Mont. 58, 310 P.3d 524.

## DISCUSSION

¶14 *1. Did the District Court err by ordering Barrick pay restitution to the victims for lost wages?*

¶15 A sentencing court must "require an offender to make full restitution" for "pecuniary loss" sustained by the victim. Section 46-18-241(1), MCA. Pecuniary loss is defined in § 46-18-243(1), MCA. Two subsections of this provision are relevant here, as follows:

> (1) "Pecuniary loss" means:
>
> (a) all special damages, but not general damages, substantiated by evidence in the record, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as

4

medical expenses, loss of income . . ., expenses reasonably incurred in attending court proceedings related to the commission of the offense . . . ."

. . .

(d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Section 46-18-243(1)(a), (d), MCA.

¶16 Barrick contends neither subsection of § 46-18-243(1), MCA, allows the Tuss Family to be compensated for lost wages. Regarding subsection (d), Barrick argues that this provision, by its plain language, does not authorize restitution for *lost wages* incurred in filing charges or cooperating in the investigation or prosecution of an offense. Rather, Barrick contends that "[o]ut-of-pocket expenses are just that—actual expenditures by the victim. The Tuss family had no financial expenditure when meeting with the County Attorney except a small amount of gas expense." He asserts the Tuss Family's lost wages or income are not recoverable because they are not an "out-of-pocket expense." The State answers that lost wages fall "within the ambit of compensable restitutionary losses" permitted by the statute and case law, citing *State v. Good*, 2004 MT 296, 323 Mont. 378, 100 P.3d 644.

¶17 We interpret a statute by first looking to its plain language. *Mont. Sports Shooting Ass'n v. State*, 2008 MT 190, ¶ 11, 344 Mont. 1, 185 P.3d 1003. "We will not interpret the statute further if the language is clear and unambiguous." *Mont. Sports Shooting Ass'n,* ¶ 11. An "out-of-pocket expense" is "[a]n expense paid from one's own funds." *Black's Law Dictionary* 659 (9th ed. 2009); *see also Merriam-Webster's Collegiate*

5

*Dictionary* 881 (11th ed. 2012) (defining "out-of-pocket" as "requiring an outlay of cash."); *SecurityComm Group, Inc. v. Brocail*, 2010 Tex. App. LEXIS 10190, 13 (Tex. App. Houston 14th Dist. 2010) ("Out-of-pocket is commonly defined as calling for the spending of cash, or consisting of or requiring an actual cash outlay."); *Stockton v. Oldenburg*, 305 Ill. App. 3d 897, 903, 713 N.E.2d 259, 264 (Ill. App. Ct. 4th Dist. 1999) (Out-of-pocket expenses "require[s] an outlay of cash."). In providing restitution for "out-of-pocket expenses," the Legislature authorized reimbursement of victim expenses that actually required a cash payment or outlay. The State cites our holding in *State v. Good* affirming an order of restitution for the victim's purchase of video surveillance equipment made at the urging of law enforcement, but that holding involved precisely such an out-of-pocket expense. *Good*, ¶ 18. Similarly, in *State v. Thompson*, 2004 MT 131, 321 Mont. 332, 91 P.3d 12, we held that the victim's rekeying of the building because of the defendant's access to the premises was an "out-of-pocket" loss that was compensable as restitution. *Thompson*, ¶ 16 (overruled on other grounds, *State v. Herman*, 2008 MT 187, ¶ 12 n.1, 343 Mont. 494, 188 P.3d 978). These cases further illustrate the clear and unambiguous meaning of the statute's wording, which provides for recovery of victim expenses involving a cash payment or outlay. In contrast, the record here demonstrates that the lost wages at issue was income that the Tuss Family claimed it was prevented from earning, not an out-of-pocket expense. Thus, subsection (d) does not provide a basis for the recovery of the claimed wages.

¶18 Turning to subsection (a) of § 46-18-243(1), MCA, the parties initially dispute how this provision—an operative definition of "pecuniary loss" as "special damages . . .

6

that a person could recover against the offender in a civil action arising out of the facts" of the crime, followed by a list of examples that are "include[ed] without limitation"—is intended to be applied. Barrick argues that restitution is permissible for only those "costs a person could receive in a civil action," and that reference must be made to a civil action to determine appropriate damages or costs.

¶19 The State argues that "[t]he analogy Barrick attempts to make comparing the Tusses to civil litigants pursuing civil litigation is . . . flawed in its basic premise" and that Barrick's assertion that "substantive civil law principles control the outcome" misconstrues subsection (a). Rather, the "statute speaks to the type of damages recoverable in a criminal sentencing hearing and does not mandate tort and contract law principles" be dispositive in determining what constitutes a loss. The State argues that Barrick "has read the words 'civil action' to mean the full incorporation of civil law defenses into [subsection (a)]." However, on this last point, the restitution statutes permit exactly that: in a proceeding to determine restitution, "the offender may assert any defense that the offender could raise in a civil action for the loss for which the victim seeks compensation." Section 46-18-244(2), MCA.

¶20 We recently analyzed the proper application of a similar statutory structure, involving an "operative definition [of 'enclosed public place'] followed by a list of items that are intended to be included within that definition." *MC, Inc. v. City-County Bd. of Health*, 2015 MT 52, ¶ 17, 378 Mont. 267, ___ P.3d ___. We explained that:

> The "including but not limited to" language in § 50-40-103(3), MCA, incorporates other places into the statute if they, although not mentioned on the list, also satisfy the operative definition. The expressly listed places

7

must likewise satisfy the operative definitions in §§ 50-40-103(1) and -103(3), MCA, and these provisions must be read together and interpreted accordingly.

*MC, Inc.*, ¶ 17. Likewise, the operative definition here of "all special damages . . . that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities," must inform and be read together with the items of damage provided in the "including without limitation" list that follows. Section 46-18-243(1)(a), MCA.

¶21 Our case law firmly supports this reading of the statute, as we have looked to substantive civil law to determine whether restitution awards under § 46-18-243(1)(a), MCA, were appropriate. Noting that the "statutes requiring restitution in a criminal sentencing are based upon damages available in a 'civil action,'" we considered "our precedent in the fields of tort and contract law" to determine whether the restitution award was appropriate in *State v. Kalal*, 2009 MT 103, ¶ 9, 350 Mont. 128, 204 P.3d 1240. In *State v. Good*, we upheld an award of mortgage payments because the victim "could recover them in a civil action" for assault. *Good*, ¶ 15. Likewise, in *State v. Essig*, 2009 MT 340, ¶ 21, 353 Mont. 99, 218 P.3d 838, we upheld the restitution award because the "expenses could be recovered in a civil action by the [victim] against [the defendant] and thus . . . they [were] legally imposed as restitution." Conversely, in *State v. Pritchett*, 2000 MT 261, ¶ 20, 302 Mont. 1, 11 P.3d 539, we reversed a district court's restitution award because the victim could not recover the damages claimed in an "appropriate civil action" for conversion under § 27-1-320(1), MCA.

8

¶22 Thus, under both the plain language of the statute and this Court's precedent, the ability of a victim to recover criminal restitution damages under § 46-18-243(1)(a), MCA, including items on the "including without limitation" list, such as "loss of income" or "expenses reasonably incurred in attending court proceedings related to the commission of the offense," is clearly contingent upon the victim being able to recover the claimed damages in a civil action.[2] Accordingly, the Tuss Family cannot be awarded restitution for lost wages or income unless it is demonstrated they could recover such damages in "a civil action arising out of the facts or events constituting [Barrick's] criminal activities." Section 46-18-243(1)(a), MCA.

¶23 Given its incorrect understanding of the statute, the State offers no authority that the Tuss Family's lost wages for attending court proceedings could be recovered in a civil action arising out of Barrick's shooting of the Tuss Family's dog. Only Barrick addresses the issue, and he offers that the appropriate civil action arising out of his shooting of the dog would be an action for conversion. He cites § 27-1-320, MCA, which provides that "[t]he detriment caused by the wrongful conversion of personal property is presumed to be: (a) the value of the property at the time of its conversion . . .

[2] Other state courts have interpreted substantially similar language in their respective restitution statutes to limit damages to those available in a civil action. *See Hampton v. State*, 2006 WY 103, ¶ 10, 141 P.3d 101 (Wyo. 2006) ("We have previously discussed the importance on appeal of identifying a civil action under which a victim could recover based on the facts admitted by the defendant or determined by the fact-finder at trial."); *State v. Depaoli*, 835 P.2d 162, 163-64 (Utah 1992) (similarly explaining statutory authority to order restitution limited to amount recoverable by victim in civil action against defendant); *State v. Hagen*, 840 N.W.2d 140, 149 (Iowa 2013) (The definition of pecuniary loss "indicate[s] a legislative intent that restitution to a victim depend[s] on what the victim could obtain in a civil action against the defendant."); *State v. Wilson*, 193 Ore. App. 506, 511, 92 P.3d 729, 731 (Or. Ct. App. 2004) ("Because the expenses at issue are not recoverable under any theory of civil liability, the trial court lacked authority to impose restitution.").

9

and (b) a fair compensation for the time and money properly expended in pursuit of the property." Barrick argues that this provision does not compensate for "general time" taken by the Tuss Family to participate in the criminal litigation. Rather, the "time and money" that may be compensated is only that which, as the statute states, is "expended in pursuit of the property." He cites authority for the proposition that "courts have distinguished between time spent in pursuit of converted property," which is generally compensable, "and time spent in litigation," which is generally not compensable. *See Harwood State Bank v. Charon*, 466 N.W. 2d 601, 605-06 (N.D. 1991).

¶24 While our Opinion here may not be the last word on the subject, we conclude on this record that Barrick's defense to the wage claim based upon the plain wording of the statute and the authority cited regarding conversion claims, in light of the absence of cited authority to the contrary, has defeated the Tuss Family's claim for wages and income lost in attending or assisting the criminal proceedings. Therefore, we reverse the amounts awarded for their lost wages.

¶25 *2. Did the District Court err by ordering Barrick pay restitution for a victim's medical bills?*

¶26 Barrick very briefly argues the District Court erred by ordering him to pay restitution for Brett Tuss' medical bills. Other than a conclusory statement that "[t]here was no causal relationship between [Brett Tuss' medical bills] and the death of the Tuss dog," Barrick offers only that no "medical issue [was] found to exist." Barrick appears to contend, not that medical expenses are unrecoverable in a civil action, but that Brett's

medical bills did not "aris[e] out of the facts" of Barrick's criminal activities under § 46-18-243(1)(a), MCA.

¶27   The District Court accorded Brett's testimony great weight. Brett testified that he experienced stress related symptoms on account of the dog's death, including loss of sleep and stomach aches. Brett Tuss further testified that the stomach aches prompted him to seek treatment with a doctor and eventually undergo a colonoscopy.

¶28   In light of Brett's testimony and the lack of contradictory evidence, we conclude that the District Court did not err by determining that Brett Tuss' medical bills arose out of Barrick's criminal conduct, and affirm the restitution ordered by the court.

¶29   *3. Did the District Court abuse its discretion by denying Barrick's motion to produce records?*

¶30   Section 46-15-322(5), MCA, provides that upon a showing "that the defendant has substantial need in the preparation of the case for additional material or information . . . the court, in its discretion, may order any person to make it available to the defendant."

¶31   Our conclusion under Issue 1 significantly narrows this issue. A primary purpose of Barrick's request for production of documents was to allow him to effectively prepare for and cross-examine the Tuss Family regarding their claim for wages lost to attend the proceedings. Because we have reversed this award, any potential prejudice Barrick might have suffered with respect to the wage claim is rendered moot.

¶32   Barrick argues had he "been allowed to obtain [Brett Tuss' medical records] he would have been able to cross-examine Brett properly and the Court would have been better informed to determine if these damages related to the death of the dog."

11

¶33 Barrick's proposed discovery included very broad requests for the Tuss Family's financial and medical information. We conclude that Barrick failed to demonstrate a substantial need for such broad discovery in light of the issues raised, and that the District Court did not abuse its discretion in denying the motion.

¶34 Affirmed in part, reversed in part, and remanded for entry of an amended judgment.


/S/ JIM RICE

We concur:

/S/ MICHAEL E WHEAT
/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA


Justice Patricia Cotter, concurring.

¶35 I concur in the result reached by the Court, which I think is correct under the statute as presently written. However, as demonstrated by the differing interpretations that the State and the defendant apply to the language contained in § 46-18-243(1)(a) and (d), MCA (hereinafter Sections 1(a) and 1(d)), the statute in its present form is hardly a model of clarity. I write separately to identify some internal inconsistencies in the statute and to suggest that it is in need of redrafting.

¶36 As the Court correctly notes in ¶ 17, an "out-of-pocket expense" is one in which there is an outlay of cash or funds. Section 1(d) allows recovery of "reasonable out-of-pocket expenses" incurred in the filing of charges or in cooperating in the

investigation and prosecution of the offense. I concur with the Court's conclusion that the victim must expend funds in cooperating in the investigation and prosecution before he or she may make a recovery under this section.

¶37 Gleaning the intent of the legislature becomes complicated, however, given its use of the alternative term "out-of-pocket losses" in Section 1(a). As the Court notes, this term is followed by a list of examples that are intended to be applied. Opinion, ¶ 18. The problem is that the Section 1(a) list of examples of such "losses" is, with one exception, a list of various cash expenditures, not "losses." The only exception is the inclusion of "loss of income" in the list. Seemingly, an out-of-pocket loss of income, such as that specifically awarded by the District Court but rejected by the Court here, would be recoverable under this provision, as it is a "loss" rather than an expenditure. However, as the Court observes, that recovery is defeated by the fact that such a loss would not be recoverable in a civil action arising out of the events constituting Barrick's particular criminal activity here.

¶38 By using the similar yet differently defined terms "out-of-pocket losses" and "out-of-pocket expenses" within the statute, and then following those terms with inconsistent examples, the legislature has unduly confused the question of what should and should not be recoverable by a victim under the statute. The statute has been amended on numerous occasions since 1983, with additional language and examples having been added, no doubt contributing to the present confusion. The legislature could rectify this uncertainty by amending the statute to appropriately distinguish between the "losses" and "expenses" that are recoverable followed by appropriate examples, and by

clearly delineating which items of loss are tethered to what the victim could recover against the offender in a civil action arising out of the events constituting the criminal activities, and which items are not. Because the statute as presently written is internally contradictory in this regard, revision is necessary.

¶39    With these caveats, I concur in the Court's Opinion.


                                        /S/ PATRICIA COTTER