Chief Justice Mike McGrath delivered the Opinion of the Court.
***322 ¶ 1 This is an appeal from a Fourth Judicial District Court judgment revoking a deferred sentence for failure to pay restitution. We affirm.
¶ 2 We restate the issues on appeal as follows:
1. Whether substantial evidence supports the District Court's finding that defendant did not make a good faith effort to pay his restitution.
2. Whether revocation of a deferred sentence for failure to pay restitution violates constitutional equal protection and due process if the probationer failed to make a good faith effort to pay.
3. Whether restitution is a fine within the purview of the Excessive Fines Clause of Article II, Section 22 of the Montana Constitution.
FACTUAL AND PROCEDURAL BACKGROUND
¶ 3 In 2008, the State charged David Cordell Johnson (Johnson) with ***323 five counts of felony theft, two counts of misdemeanor theft, three felony counts of exploiting an older person, and one misdemeanor count of exploiting an older person. The State alleged that Johnson defrauded elderly clients while selling insurance and annuities. According to the State, Johnson improperly accepted loans from elderly clients and transferred elderly clients' accounts to different annuities in return for substantial commissions without their full understanding of the penalties.
¶ 4 Johnson pleaded guilty to two counts of felony theft, whereby the State dismissed the remaining charges. On May 17, 2010, the District Court imposed deferred sentences for six years on each count, to run concurrently. The District Court ordered Johnson to pay $87,339.50 in restitution plus interest and supervision fees. This Court affirmed. State v. Johnson , 2011 MT 116, 360 MT 443, 254 P.3d 578.
¶ 5 Over the next six years, Johnson worked sporadically. He worked full-time for fourteen to sixteen months total, spread across three different jobs. He quit at least one job and was fired from two. By the end of the deferral period, Johnson had paid off $3,799 of his $87,339 restitution obligation. On May 12, 2016, the State filed a petition to revoke Johnson's deferred sentence for failing to make a good faith effort to pay restitution and supervision fees. At that time, Johnson had not made a restitution payment in seven months.
¶ 6 At a hearing on August 25, 2016, Johnson's probation officers testified regarding Johnson's lack of effort to find work. Johnson held out for high-paying, managerial jobs instead of accepting steady full-time work, albeit for less pay. Johnson confirmed his preference not to "settle for something" on the stand. According to one probation officer's testimony, Johnson would tell her "about one position that would be in one state and then a couple weeks later it was a different job entirely, or he had to go to training for one and he would lose that one or quit because he was going to do this other *497 one." She stated she felt like she tried "harder than he [did] to keep him on track." Johnson's work was "sporadic at best." Another officer testified that Johnson, despite ample opportunity over the six years, had not made a concerted effort to maintain employment. He recommended the sentence be suspended, rather than deferred.
¶ 7 Johnson does not deny his failure to make regular restitution payments. He testified that his criminal record deterred employers from hiring him, but his probation officers stated that most probationers maintained full-time employment despite their criminal records. Furthermore, Johnson had a college degree, which his probation officers testified gave him an advantage many probationers ***324 did not have. Johnson testified he completed 587 hours of community service, but did not receive credit because he failed to pay the required $1 per hour fee. He testified his income covered only living expenses. At one point, Johnson was living out of his car and showering at truck stops. He had a $58,000 tax liability, which the IRS stopped pursuing due to his indigence.
¶ 8 During this period Johnson collected unemployment ($4,433 in 2010) and received food stamps, but failed to inform the Department of Corrections of this income. From 2011 to 2015, Johnson received $500 per month following his mother's death. He also initially received commissions from his former work selling insurance and annuities worth $300 to $500 per month of taxable income. However, Johnson testified that by the end of his deferred sentence they were worth much less. Since 2010, Johnson made roughly fifty payments of an average $71.58. Meanwhile, he consistently paid $70 per month toward his credit card and $100 per month toward his daughter's student loan.
¶ 9 Based on the testimony and argument presented at the hearing, the District Court concluded that
The State has met its burden in this case of showing that there has not been a good faith effort in meeting the restitution obligations. The Court will therefore find a violation of the probation conditions ... imposed by [the court when it] deferred the imposition of sentence in this case.
The District Court revoked Johnson's deferred sentence and imposed a new sentence for six years on each count, to run concurrently, again deferred with the same conditions. Johnson was required to make monthly income and expense reports. Johnson appeals this decision, arguing he made a good faith effort to make the payments, but could not afford them.
STANDARD OF REVIEW
¶ 10 This Court exercises plenary review over constitutional questions. State v. Edmundson , 2014 MT 12, ¶ 12, 373 Mont. 338, 317 P.3d 169. This Court reviews a district court's decision to revoke a suspended sentence for abuse of discretion. Edmundson , ¶ 12. Revocation decisions involve both legal and factual findings. For legal questions, the standard of review is de novo; for factual questions, a district court will be reversed only for clear error. Tefft v. State , 271 Mont. 82, 91-92, 894 P.2d 317, 323 (1995). A defendant's ability to pay is a factual determination. State v. Reynolds , 2017 MT 317, ¶ 16, 390 Mont. 58, 408 P.3d 503. A finding of good faith in the context of making restitution payments is similarly factual, and reversible only for clear ***325 error. A district court's factual findings are clearly erroneous if they are not supported by substantial credible evidence, if the court misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been made. Reynolds , ¶ 16.
DISCUSSION
¶ 11 1. Whether substantial evidence supports the District Court's finding that defendant did not make a good faith effort to pay his restitution.
¶ 12 Johnson asserts he made a good faith effort to pay restitution, and that the District Court erred in revoking his deferred sentence for failure to pay.
¶ 13 Montana law directs sentencing courts to order offenders "to make full restitution to any victim who has sustained a pecuniary loss, including ... economic loss." Section 46-18-241(1), MCA. The law requires full restitution *498 of deferred sentences, and the duty to pay remains with an offender until paid in full. Sections 46-18-201(5), -241(1), MCA. Revocation of a deferred sentence is appropriate where the State proves by a preponderance of the evidence a violation of the terms and conditions of the deferred sentence. Section 46-18-203(6)(a)(i), MCA. "However, when a failure to pay restitution is the basis for the petition, the offender may excuse the violation by showing sufficient evidence that the failure to pay restitution was not attributable to a failure on the offender's part to make a good faith effort to obtain sufficient means to make the restitution payments as ordered." Section 46-18-203(6)(b), MCA ; State v. Welling , 2002 MT 308, ¶ 15, 313 Mont. 67, 59 P.3d 1146 (defendant's "failure to pay restitution was not caused by her lack of a good faith effort"); Bucher v. Hughes , 2010 MT 147, ¶ 7, 357 Mont. 19, 235 P.3d 1281 (defendant's "parole officer testified that $100 per month represented the most that [defendant] reasonably could pay toward restitution in light of his financial situation").
¶ 14 It is undisputed that over Johnson's almost six-year probationary period, Johnson violated his probation by contributing only $3,799 toward restitution and nothing toward his supervision fees. Johnson did not make a restitution payment for seven months prior to the filing of the petition.
¶ 15 The District Court found that Johnson did not make a good faith effort to pay restitution based on the substantial evidence presented by the State. Johnson had three probation officers over the period of ***326 deferral. While Johnson argued that his criminal record deterred employers from hiring him, his probation officers testified that other probationers maintained full-time employment, despite their criminal records. Instead, Johnson's lack of effort and interest in working lower paying jobs kept him from steady employment. All three probation officers indicated that Johnson had not made a good faith effort to find consistent work.
¶ 16 Johnson asserts he made little income due to his struggle to find higher-paying work, and that he could not pay restitution because he spent his income on living expenses. However, Johnson's probation officers pointed to other sources of income (an inheritance, unemployment, food stamps, and commissions from former insurance sales) to explain Johnson's lack of motivation to maintain full-time work, and that he prioritized other monthly payments over his restitution payments. He consistently paid $100 per month toward his daughter's student loan, although he testified she could pay it herself. The District Court's finding that Johnson did not make a good faith effort to pay restitution is substantially supported by the evidence. See § 46-18-203(6)(b), MCA ; Bucher , ¶ 7.
¶ 17 2. Whether revocation of a deferred sentence for failure to pay restitution violates constitutional equal protection and due process if the probationer failed to make a good faith effort to pay.
¶ 18 Johnson contends that revocation of his deferred sentence for failure to pay restitution violates his right to equal protection and due process under the United States and Montana Constitutions. U.S. Const. amend. XIV ; Mont. Const. art. II, § 4. Johnson contends the District Court should have considered alternative methods to make him pay before revoking his sentence and imposing a new one.
¶ 19 Revocation of an indigent defendant's probation for failure to pay restitution does not violate the Fourteenth Amendment so long as the sentencing court finds that the indigent defendant did not make "sufficient bona fide efforts" to pay the restitution. Bearden v. Georgia , 461 U.S. 660, 662, 103 S.Ct. 2064, 2071, 76 L.Ed.2d 221 (1983). In Bearden , the trial court automatically revoked the offender's probation for failure to pay restitution, and sentenced him to serve the remainder of his probationary period in prison. Bearden , 461 U.S. at 663, 103 S.Ct. at 2063. The Court reversed and remanded, holding that revocation and imprisonment were improper without a finding that the offender was at fault for not making the restitution payments. Bearden , 461 U.S. at 674, 103 S.Ct. at 2074. Only when the "probationer has made all reasonable efforts to pay" restitution must the sentencing court consider *499 alternative measures of punishment other than ***327 imprisonment. Bearden , 461 U.S. at 668, 103 S.Ct. at 2070-71.
¶ 20 In MacPheat v. Mahoney , this Court characterized Bearden as
clearly and unambiguously stand[ing] for the principle that to deprive a criminal defendant of his freedom simply because, through no want of bona fide effort, willful refusal or fault of his own, he lacks the financial resources to buy his liberty would be contrary to the fundamental fairness required by the Fourteenth Amendment.
2000 MT 62, ¶ 21, 299 Mont. 46, 997 P.2d 753. The parties do not cite a case where revocation of a sentence for failure to pay restitution was a violation of the Montana Constitution when the offender did not make a good faith effort to pay.
¶ 21 While Johnson contends that the District Court erred by failing to consider alternatives to revocation, Bearden clearly states that alternative punishments need only be considered when the defendant has made all reasonable efforts to pay restitution. The Court in Bearden listed "extend[ing] the time for making payments" as an example of an appropriate alternative to imprisonment. Bearden , 461 U.S. at 672, 103 S.Ct. at 2072. That is essentially what the District Court did in this case.
¶ 22 The District Court found that Johnson did not make a good faith or bona fide effort to pay his restitution. The revocation of Johnson's deferred sentence and replacement with another deferred sentence was not a constitutional violation.
¶ 23 3. Whether restitution is a fine within the purview of the Excessive Fines Clause of Article II, Section 22 of the Montana Constitution.
¶ 24 Citing State v. Good , 2004 MT 296, 323 Mont. 378, 100 P.3d 644, Johnson argues that criminal restitution is an excessive fine because of his inability to pay.
¶ 25 The Excessive Fines Clause of the Montana Constitution states that "excessive bail shall not be required, or excessive fines imposed, or cruel and unusual punishments inflicted." Mont. Const. art. II, § 22. The Eighth Amendment of the United States Constitution is nearly identical; it uses "nor" instead of "or." U.S. Const. amend. VIII. While this Court coextensively interprets the Eighth Amendment's Excessive Fines Clause and Montana's Excessive Fines Clause, this Court does not assume that the federal version has been incorporated against the states. This Court therefore addresses only Johnson's state constitutional claim. See State ex rel. Hardy v. Bd. of Equalization , 133 Mont. 43, 319 P.2d 1061, 1064 (1958) ; Good , ¶ 20 ;
***328 State v. Forfeiture of 2003 Chevrolet Pickup , 2009 MT 25, 349 Mont. 106, 202 P.3d 782 ; State v. Timbs , 84 N.E.3d 1179 (Ind. 2017) (petition for writ of certiorari to the Supreme Court granted).
¶ 26 The Excessive Fines Clause limits the government's power to extract payments as punishment for some offense. United States v. Bajakajian , 524 U.S. 321, 324, 118 S.Ct. 2028, 2034, 141 L.Ed.2d 314 (1998). A fine violates the Excessive Fines Clause "if it is grossly disproportionate to the gravity of a defendant's offense." Bajakajian , 524 U.S. at 334, 118 S.Ct. at 2036. Before determining whether a fine is excessive, a court must first determine whether the government exacted a fine. The hallmark of a fine is that it constitutes punishment. Bajakajian , 524 U.S. at 328, 118 S.Ct. at 2033. Punishment is "a sanction - such as a fine, penalty, confinement or loss of property, right, or privilege-assessed against a person who has violated the law." Punishment, Black's Law Dictionary (10th ed. 2014). The inherent purpose of punishment is to deter, whereas the inherent goal of a remedial action is to compensate for loss. Bajakajian , 524 U.S. at 329, 118 S.Ct. at 2034 (citing Remedial Action, Black's Law Dictionary (6th ed. 1990) ("Remedial action" is one "brought to obtain compensation or indemnity") ).
¶ 27 The Supreme Court has never specifically addressed whether criminal restitution constitutes punishment.[1] This Court therefore *500 looks to Montana jurisprudence to determine the inherent purpose of Montana's criminal restitution statutes and whether they constitute punishment per Montana's Excessive Fines Clause. Mont. Const. art. II, § 22.
¶ 28 Montana's criminal restitution statutes are remedial in nature. Their purpose is to make victims whole, not to further punish offenders. State v. Barrick , 2015 MT 94, ¶ 22, 378 Mont. 441, 347 P.3d 241. Offenders have a duty to fully re-pay victims for what they have taken. State v. Fenner , 2014 MT 131, ¶ 8, 375 Mont. 131, 325 P.3d 691 ***329 (citing § 46-18-201(5), MCA ). The sentencing court determines the amount an offender owes a victim based on substantial credible evidence "specifically describ[ing] the victim's pecuniary loss and the replacement value in dollars of the loss," and nothing more. Section 46-18-242, MCA ; see Fenner , ¶ 13. Were the intent to punish offenders rather than compensate victims, sentencing courts might have more discretion to award additional restitution based on the severity of the crime, lost wages, or the emotional distress inflicted. Barrick , ¶ 22 (this Court refused to award restitution for lost wages because the plaintiff could not demonstrate that lost wages were recoverable in a civil action arising out of the same facts). Instead, victims must substantiate the dollar amount of their pecuniary losses and prove their recoverability in civil actions arising out of the same facts. Barrick , ¶ 22 ; State v. Kalal , 2009 MT 103, ¶ 8, 350 Mont. 128, 204 P.3d 1240 ; State v. Essig , 2009 MT 340, ¶ 21, 353 Mont. 99, 218 P.3d 838.
¶ 29 Furthermore, the offender's duty to make criminal restitution payments to the victim remains until the victim is repaid in full, even after the offender completes his sentence. Section 46-18-241(1), MCA. Victims may even enforce restitution awards against an offender's estate following an offender's death. State v. Benn , 2012 MT 33, ¶ 11, 364 Mont. 153, 274 P.3d 47. Victims in Montana may enforce restitution awards like any civil judgment, at any time, outside and independent of the criminal court. Section 46-18-249(1), MCA ; see State v. Cottrell , 152 Idaho 387, 271 P.3d 1243, 1253 (2012). Restitution is therefore disconnected from the offender's punishment and focused on compensation for the victim. See Benn , ¶ 11 ; Cottrell , 271 P.3d at 1253.
¶ 30 There is a fundamental difference between requiring an offender to pay back what he owes and sanctioning an offender to deter unwanted behavior by imposing a fine. Such is the difference between restitution and forms of punishment like forfeiture. Restitution statutes focus on the victim and compensation for loss, whereas statutes that aim to punish, like Montana's forfeiture statutes, focus on the offender and deterrence of unwanted behavior. See Cottrell , 271 P.3d at 1253.
¶ 31 Johnson relies on Good to argue that restitution in Montana is punitive. In Good , this Court improperly deduced that because forfeiture constituted a fine in Bajakajian , restitution also constituted a fine, but forfeiture and restitution do not share the same inherent purpose. See Good , ¶¶ 21-22 (citing Bajakajian , 524 U.S. at 329 n. 4, 118 S.Ct. at 2034 n. 4 ).
¶ 32 There is a marked difference between forfeiture and restitution.
***330 In Bajakajian , the Court found that forfeiture of currency was a fine because the purpose of the forfeiture was to "deter illicit movements of cash," not compensate for loss; forfeiture was a form of punishment, not a remedial action like restitution. Bajakajian , 524 U.S. at 329, 118 S.Ct. at 2034 ; see Criminal Forfeiture, Black's Law Dictionary (10th ed. 2014) (Criminal forfeiture is "a governmental proceeding brought against a person to seize property as *501 punishment for the person's criminal behavior") (emphasis added).
¶ 33 Likewise, in examining Montana's "forfeiture provisions it is hard to ignore their penological basis." State v. Chilinski , 2016 MT 280, ¶ 21, 385 Mont. 249, 383 P.3d 236 (forfeiture proceedings imposed for violations of the law are not matters in equity). Unlike restitution, forfeited property generally remains with the confiscating agency or is sold. Section 44-12-212, MCA. The proceeds are then spent on drug-law enforcement and education, not compensating victims for loss. Section 44-12-213, MCA.
¶ 34 Given the confusion generated by Good , this Court now undertakes to move our jurisprudence in a direction more faithful to the language and inherent purpose of Montana's criminal restitution statutes and Excessive Fines Clause. Mont. Const. art. II, § 22. We now overrule Good , as well as the cases that rely on Good for the principle that restitution in Montana is punitive and a fine per the Excessive Fines Clause. Mont. Const. art. II, § 22 ; see State v. Kuykendall , 2006 MT 110, ¶ 17, 332 Mont. 180, 136 P.3d 983.
¶ 35 While Good stated that restitution's primary purpose was "to make the victims of crime whole," it held that restitution was also punishment, because it was not exclusively remedial. Good , ¶¶ 21-22 (citing Bajakajian , 524 U.S. at 329 n. 4, 118 S.Ct. at 2034 n. 4 ). In support of this conclusion, Good stated that restitution was imposed during sentencing and incidentally deterred illicit behavior. Good , ¶ 22 ("Restitution is only imposed if there is a conviction" and is an aspect of sentencing).
¶ 36 Criminal restitution is not punitive because it is imposed during sentencing and incidentally deters illicit behavior. Such a conclusion is ingenuine to the purpose and intent behind requiring offenders to pay restitution. Section 46-18-201(5), MCA, plainly states that the purpose behind determining restitution obligations at the time of sentencing is "full restitution to the victim." This Court declines to read into Montana's restitution statutes a vague punitive purpose unsupported by the plain language. Many restitution proceedings occur at separate hearings at later times. Furthermore, Montana's Excessive ***331 Fines Clause would have no limit were this Court to characterize restitution as punishment simply because requiring an offender to re-pay what he owes incidentally deterred illicit behavior. Any deterrent effect is vastly overshadowed by restitution's primary goal of compensating victims for losses directly attributable to an offender's criminal behavior. See Cottrell , 271 P.3d at 1253.
¶ 37 This Court holds that the primary purpose of criminal restitution in Montana is remediation, not punishment. Criminal restitution is therefore not within the purview of Montana's Excessive Fines Clause. Mont. Const. art. II, § 22. It is unnecessary for us to consider whether Johnson's restitution is excessive under Article II, Section 22 of the Montana Constitution, because Johnson's restitution obligation is not a fine in the State of Montana.
CONCLUSION
¶ 38 The District Court relied on substantial evidence presented during the evidentiary hearing to determine that Johnson did not make good faith efforts to pay his restitution and supervision fees. The District Court did not abuse its discretion in revoking Johnson's deferred sentence and imposing a new sentence. Because Johnson did not make good faith efforts to pay his restitution, revocation does not violate the due process requirements of the Fourteenth Amendment. U.S. Const. amend. XIV ; Mont. Const. art. II, § 4. Johnson's obligation to pay restitution is not a fine within the purview of Montana's Excessive Fines Clause, Article II, Section 22 of the Montana Constitution, because it is remedial in nature.
¶ 39 Affirmed.
We Concur:
JAMES JEREMIAH SHEA, J.
JIM RICE, J.
BETH BAKER, J.
DIRK M. SANDEFUR, J.

The federal circuit opinions interpreting the Mandatory Victims Restitution Act of 1996 (MVRA), 18 U.S.C.S. §§ 3663A -3664, are inapposite here, as they interpret a federal law, not Montana law. Furthermore, the federal circuits are split as to whether the MVRA constitutes punishment per the Excessive Fines Clause. U.S. Const. amend. VIII. The Ninth Circuit held that while the MVRA's primary purpose was to compensate victims, it also held offenders accountable for the harms they caused; the MVRA constituted punishment. United States v. Dubose , 146 F.3d 1141, 1145 (9th Cir. 1998). Whereas the Seventh Circuit held that the MVRA was not punishment because it "barely concern[ed] itself with the effect of restitution upon a defendant in its attempt to ensure that victims of a defendant's criminal activity [we]re made whole." United States v. Newman , 144 F.3d 531, 541 (7th Cir. 1998).