FILED

11/14/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0356

DA 21-0356

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2023 MT 214

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

ROBERT MARTIN ARTHUN,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-20-23-C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Tammy A. Hinderman, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

          Audrey Cromwell, Gallatin County Attorney, Eric Kitzmiller, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  June 21, 2023

Decided:  November 14, 2023

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Robert Martin Arthun appeals from the judgment entered by the Eighteenth Judicial District Court following a trial in which the jury found him guilty of Criminal Mischief, a felony, in violation of § 45-6-101, MCA. Arthun challenges the District Court's restitution order. We consider:

1. *Did the District Court err as a matter of law by assessing restitution for the damage caused to five vehicles when the State charged all of the acts under a single count alleging felony criminal mischief with damage of more than $1,500?*

2. *Did the District Court err in the determination of the amount of restitution to be imposed for damage to the Ford Mustang?*

3. *Did the District Court commit plain error necessitating review by awarding "full restitution" rather than an amount based upon Arthun's ability to pay?*

¶2 We affirm in part, reverse in part, and remand for entry of an amended judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 At the time of the events herein, Arthun drove and lived in a motor home. On March 18, 2019, Arthun was employed with Avis Car Rental in Belgrade, Montana, and after leaving work that day, drove to several locations in the Belgrade area. At about 10:30 p.m., Doug Nelson (Doug), who had previously assisted Arthun in obtaining employment at Avis, heard noise that he described as metal contacting metal, which he thought was his neighbor, a contractor, putting tools in the back of his pickup. Doug testified that, after about ten minutes, he became concerned, turned on his porchlight and looked outside. He saw Arthun standing between Doug's Chevrolet Astro van and his Ford Mustang. Doug testified that when Arthun saw him, Arthun walked to his motor home, which was parked in the middle of the street with the engine running, got in and drove away.

2

¶4 A couple of hours later, Arthun's motorhome stalled on the street outside the home of Keith Nelsen (Keith), brother to Doug Nelsen. Arthun claimed he did not wish to wake up Keith or his mother, who lived with Keith, and thus simply waited at that location until his brother, Paul, could arrive to "jump start" the motorhome. Keith testified he heard banging and clanging outside his home during the night, and thought it was someone shoveling snow, so did not then investigate. Arthun's brother arrived, jump-started the motorhome, and Arthun drove away.

¶5 In the morning, Doug went outside to start his vehicle and discovered car parts strewn over the parking area, and damage to both his Astro van and Ford Mustang. He described at trial the similar damage inflicted to both vehicles, including that door handles were ripped off, gas caps were missing, pry gouges were made on the Astro van's front hood, snip marks or cuts were made on the fenders of the Mustang, and the wipers and mirrors were bent or broken on both vehicles. The Astro's tires were flat. Also that morning, Keith went outside to start his vehicle and discovered his Dodge Dakota had two flat tires, the door handle had been torn off, the fuel door was bent, and the tailgate latch was broken. Keith's Nissan Sentra was also damaged in a virtually identical fashion, as was Doug's Pontiac Grand Prix, which was parked at Keith's home.

¶6 The brothers reported the damage to law enforcement and took the vehicles to Collison Center of Belgrade (CCB), which provided repair estimates. The shop estimated repair costs to be $4,358.19 (Chevrolet Astro), $5,219.98 (Ford Mustang), $489.50 (Dodge Dakota), and $4,484.56 (Pontiac Grand Prix). CCB deemed the Astro, Grand Prix, and

Dakota to be "total losses," meaning that the cost of repairs would exceed the value of the vehicle.[1]

¶7 The State charged Arthun with one count of felony criminal mischief, alleging that Arthun "on or about March 18, 2019, . . . knowingly or purposely injured, damaged, or destroyed property of another without consent, when he broke and damaged parts of vehicles belonging to Douglas and Keith Nelsen, and by such criminal mischief caused a pecuniary loss of more than $1,500," in violation of § 45-6-101, MCA. The probable cause affidavit filed in support of the Information identified and detailed the damage done to all five of the Nelsen brothers' vehicles, and estimated the total damage to exceed $20,000. Arthun pled not guilty, and the case proceeded to a jury trial.

¶8 At trial, the State introduced evidence of the damage done to all of the cars located at Doug and Keith's residences. At the close of the trial, Arthun did not offer an unanimity instruction, but did offer and the District Court gave a continuous conduct instruction, stating in relevant part:

> The State accuses Mr. Arthun of Criminal Mischief. You may find Mr. Arthun guilty if the proof shows beyond a reasonable doubt the Defendant committed any one or more of such acts, but in order to find the Defendant guilty, all the jurors must agree that the Defendant committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict.

Without objection, the District Court provided a verdict form that asked the jury to find Arthun was guilty or not guilty to the charge of criminal mischief "and causing a pecuniary

---

[1] We find no written repair estimate in the record for the Nissan Sentra.

loss in excess of $1,500," as well as the option of finding Arthun guilty of a lesser offense of misdemeanor criminal mischief if the loss did not exceed $1,500. The jury found Arthun guilty of the felony.

¶9 The District Court conducted a sentencing hearing on May 5, 2021, but continued the hearing to May 24, 2021, to conduct a restitution hearing and receive argument on issues raised by Arthun, including Arthun's ability to pay restitution, and that, because the State chose to charge all acts under one count, the jury only had to find damage in excess of $1,500 to convict, and there was no way to know which "vehicles damaged the jury actually came to a unanimous verdict upon." The District Court clarified that it would take up Arthun's issues and conduct a restitution hearing, but that "[w]e're not retrying the case."

¶10 The District Court ultimately denied Arthun's objections, stating there "was testimony at trial about individual vehicles being damaged," and as such, the State was not barred from seeking restitution for all vehicles even though the charges were all brought under one count. The District Court took evidence about the repair costs for purposes of restitution, and the State provided the original valuations of the Mustang, Astro, Grand Prix and Dakota. The State also provided documentation that Doug had paid $396 in temporary repairs to make the Mustang useable, and a new estimate that updated the cost of repairing the Mustang to be $3,060.91. Defense counsel also presented valuations for the vehicles, three of which had been totaled, and argued that the District Court should determine restitution for the Mustang based upon the new estimate plus the amount for the repairs Doug had made, totaling $3,456. The District Court then heard argument regarding

5

Arthun's ability to pay. The District Court considered Arthun's Presentence Investigation Report, his current living situation within a residence, and his current employment and finances. The District Court concluded the State had made a prima facia showing that Arthun had the ability to pay restitution, and asked Defense Counsel, "Do you dispute that?" Defense Counsel replied that he did not want the District Court to extend a possible sentence for purposes of restitution, and the defense had reviewed Arthun's financial records, "[s]o we will drop that." After deliberation, the District Court ordered restitution in the amount of $11,420.13, including $1,222 for the Dakota and Sentra, $5,219.98 for the Mustang, $1,850 for the Astro, $3,125 for the Grand Prix, and $105.15 in costs for a rental car. The District Court sentenced Arthun to six days in jail, but deferred the sentence conditioned upon successful completion of probation and payment of the restitution over four years. Arthun appeals.

## STANDARD OF REVIEW

¶11 Restitution awards are mixed questions of law and fact that this Court reviews *de novo*. *State v. Lodahl*, 2021 MT 156, ¶ 11, 404 Mont. 362, 491 P.3d 661. We review a district court's findings of fact regarding the amount of restitution for clear error, noting a finding of fact is only clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if this Court's review of the record leaves the Court with the firm conviction that a mistake has been made. *State v. Cleveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 423 P.3d 1074. We determine evidence to be substantial if it is evidence "that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat

6

less than a preponderance." *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841 (internal citations omitted).

**DISCUSSION**

¶12    *1. Did the District Court err as a matter of law by assessing restitution for the damage caused to five vehicles when the State charged all of the acts under a single count alleging felony criminal mischief with damage of at least $1,500?*

¶13    Arthun argues the District Court erred when it determined restitution based on the damage caused to all five vehicles. He contends that because the State charged him with a single count, the jury only adjudged whether he caused damage in excess of $1,500, not whether he was guilty of the damage on each individual vehicle. Noting the language in *State v. Simpson*, 2014 MT 175, ¶ 14, 375 Mont. 393, 328 P.3d 1144, that "[o]ffenders are liable for restitution only for those offenses of which they have been found guilty or to which they have admitted or agreed to pay restitution," Arthun argues he can only be assessed $1,500 in restitution. He analogizes this case to *In re B.W.*, 2014 MT 27, 373 Mont. 409, 318 P.3d 682, wherein we reversed the restitution award because the youth offender, when entering his admission, acknowledged responsibility for only two days of vandalism conduct that had continued over several weeks and involved other offenders. *In re B.W.*, ¶¶ 5, 30.

¶14    Section 46-18-201(5), MCA, provides that "the sentencing judge shall, as part of a sentence, require payment of full restitution to the victim" who has sustained a pecuniary loss. The victim is entitled to "the full replacement cost of property taken, destroyed, harmed or otherwise devalued as a result of the offender's criminal conduct." Section 46-18-243(1)(b), MCA. However, restitution may be imposed only for losses that are

7

causally related to the "offender's admitted or adjudicated criminal conduct." *State v. Pierre*, 2020 MT 160, ¶ 13, 400 Mont. 283, 466 P.3d 494.

¶15 The criminal mischief statute provides that "[a]mounts involved in criminal mischiefs committed pursuant to a common scheme or the same transaction, whether against the public or the same person or several persons, may be aggregated in determining pecuniary loss." Section 45-6-101(4), MCA. While Arthun argues the Information did not explicitly allege a common scheme or the same transaction, it clearly alleged, and was supported by further detail in the probable cause affidavit, that Arthun had committed a series of damaging acts to five vehicles owned by Doug Nelsen and Keith Nelsen during one night, thus describing a singular transaction for purposes of aggregating pecuniary loss. Brothers Doug and Keith were "the same person or several persons" under § 45-6-101(4), MCA, and indeed, Doug's Grand Prix was damaged while parked at Keith's house. Thus, Arthun was apprised that the State was aggregating the damage inflicted upon all of the vehicles within one count to establish the total pecuniary loss.

¶16 It was within the State's discretion to allege one count encompassing all of the acts committed in this singular criminal mischief transaction, thus sparing Arthun from multiple charges. *See State v. Wilson*, 2007 MT 327, ¶ 39, 340 Mont. 191, 172 P.3d 1264 ("Although the State could have framed the tampering charges more specifically, and charged separate counts for each act, it was not required to do so."). It does not follow that, because the State charged the criminal mischief acts under one count, it was barred from seeking restitution for more than the threshold felony amount. "All that is ultimately required is that the jury unanimously agree to the particular set of facts necessary to sustain

8

a conviction for the crime alleged in the Information." *Wilson*, ¶ 39. Arthun did not request a specific unanimity instruction, although the continuous conduct instruction he proposed, quoted above, provided that the jurors "must agree that the Defendant committed the same act or acts. It is not necessary that the particular act or acts committed so agreed upon be stated in the verdict."

¶17 Of course, the State must still prove the amount of the pecuniary loss for which Arthun is responsible. *Pierre*, ¶ 13 ("The State has the burden of proving the requisite causal connection or criminal accountability for restitution . . ."). However, restitution is proven by a preponderance of the evidence, not beyond a reasonable doubt, and need not be included on a verdict form. *See Aragon*, ¶ 16 ("As a pecuniary loss is defined to be those damages that would be recoverable in a civil action, § 46-18-243(1)(a), MCA, there must be a preponderance of the evidence supporting the restitution award. *See State v. Hilgers*, 1999 MT 284, ¶ 4, 297 Mont. 23, 989 P.2d 866; § 26-1-403(1), MCA."). Although Arthun cites the narrower language employed in *Simpson*, cited above, we have more fully explained that "[t]he sentencing court may find the requisite causal nexus for restitution, between an offender's admitted or adjudicated criminal conduct and the asserted victim loss, upon an admission, by implication from proof of the elements of the charged offense, upon victim affidavits included with a PSI, or upon other evidence presented at or incident to sentencing." *Pierre*, ¶ 13; *see also State v. Patterson*, 2016 MT 289, ¶ 16, 385 Mont. 334, 384 P.3d 92 ("evidence presented in favor of restitution must be substantiated in the record 'such that a reasonable mind' could conclude that the award of restitution was warranted."). If Arthun had wanted to challenge a particular portion of the aggregated loss

the State had alleged, he could have requested a specific verdict form with interrogatories, but did not.

¶18 During trial, the State had introduced substantial evidence regarding the damage sustained by all five vehicles, which the District Court acknowledged during sentencing. After rejecting Arthun's threshold objection to a restitution award, and conducting the restitution hearing, the District Court entered oral findings of fact, followed by entry of written findings of fact and conclusions of law, noting it had received sworn testimony from Keith Nelsen and Doug Nelsen regarding the cost of repairing their vehicles, received exhibits evidencing those costs, and that the PSI report had addressed those costs. The PSI had documented losses totaling $14,248.43. After the hearing, the District Court ordered restitution based upon the damage sustained by all five vehicles in the amount of $11,420.13.

¶19 We are not persuaded by Arthun's reliance on *In re B.W.* There, the State charged multiple youths, including B.W., with acts of vandalism that occurred between December 2, 2012, and January 8, 2013. *In re B.W.*, ¶ 4. However, when B.W. entered his admission, he acknowledged participation in only two nights of vandalism, December 22 and December 29. Nonetheless, the District Court ordered B.W. to pay a full share of restitution for all of the vandalism that occurred between December 22 and January 8. We reversed the District Court's restitution award, concluding B.W. could not be held jointly and severally liable for restitution beyond his admission because the State had not proven B.W. was accountable for the acts of others, and the charging petition did not advise that the Youth could be found to be jointly liable with others. *In re. B.W.*,

10

¶¶ 22-26. In contrast, Arthun did not enter a guilty plea based upon acknowledgment of specific conduct, or at all. Rather, he was adjudged guilty after trial on a single charge alleging the total damage.

¶20 We conclude the District Court did not err by concluding that restitution could be imposed for all the damage that was alleged under the single count of criminal mischief, subject to the State's satisfaction of the appropriate restitution burden of proof.

¶21 *2. Did the District Court err in the determination of the amount of restitution to be imposed for damage to the Ford Mustang?*

¶22 Arthun alternatively challenges the amount of restitution imposed, but only for damage to the Ford Mustang, not for the other vehicles or for the cost of the rental car utilized by Doug Nelsen. At trial, evidence was presented of an initial March 2019 estimate for repairs to the Ford Mustang. The report, prepared by CCB, estimated repairs would cost $5,219.98, and this report was also relied upon by the PSI. The parties agreed the Mustang was valued higher than this estimated repair amount. At the restitution hearing, the State likewise introduced this initial estimate, describing it as "the preliminary estimate of the Ford Mustang." However, the State also introduced a receipt for $396 Doug Nelsen had incurred to AutoKraft for subsequent repairs to the Mustang, and a second estimate prepared by CCB in May 2021, over two years after the offense, which the prosecutor described as "involving the Ford Mustang as of today." That estimate stated the remaining repairs for the Ford Mustang would cost $3,060.91. The State offered no evidence or explanation that would call into question the validity of this later estimate.

¶23 Despite introducing the new repair estimate and evidence of the cost of repair already completed, the State nonetheless urged the District Court to utilize the amount of the initial estimate, offering the brief argument that "I think the appropriate way of coming up with the repair value for that is the original repair value of the $5,219.98, and I would argue that that's the appropriate amount of restitution that is owed," and noting "it was close in time to when this offense occurred." Defense counsel urged the District Court to instead award $3,456.91 for the Mustang, which was the combined amount of the $396 repair cost Doug Nelsen had already incurred and the updated estimate from CCB of $3,060.91. On this issue, the District Court orally stated only, "I'm going to order that, regarding the 2006 Ford Mustang, that [Arthun] pay those repairs that were estimated at the time of trial in the amount of $5,219.98."

¶24 Restitution awards are mixed questions of law and fact that we review *de novo*. *Lodahl*, ¶ 11. Beyond the prosecutor's comment that the initial estimate was closer in time to the offense, we find no evidence or reasoning in the record that would demonstrate either that the initial estimate was a more accurate assessment of the damage caused or that the second estimate, prepared more recently and after initial repairs were made to the vehicle, was a less accurate assessment of remaining costs to repair the damage. The District Court offered no reasoning for accepting the initial estimate over the second estimate. Consequently, on this record, we conclude that the $3,456.91 in restitution recommended by Arthun at sentencing for the Mustang, representing the actual repair expenses of $396 and the updated estimate of $3,060.91, was sufficient to satisfy the purpose of a restitution award "to make victims whole." *State v. Johnson*, 2018 MT 277, ¶ 28, 393 Mont. 320, 430

P.3d 494; *see also Aragon*, ¶ 19 (reversing a restitution award for a higher amount when "[a] reasonable mind could not conclude, solely from the two estimates, that one was more appropriate than another."). We reverse the amount awarded for the Ford Mustang and remand for entry of an amended judgment reflecting the correct amount of $3,456.91.

¶25 *3. Did the District Court commit plain error necessitating review by awarding "full restitution" rather than an amount based upon Arthun's ability to pay?*

¶26 Noting that the criminal mischief statute requires restitution to be ordered subject to "the convicted person's ability to pay the restitution," § 45-6-101(2), MCA, Arthun argues the District Court erred by imposing restitution for the full amount of damage done to the vehicles without consideration of Arthun's ability to pay. Arthun acknowledges the Court would need to invoke plain error review to take up the issue, given his concession before the District Court. Arthun initially raised an objection to restitution based upon his ability to pay. During the restitution hearing, the District Court considered Arthun's financial status and concluded the State had made a prima facie showing that Arthun had the ability to pay, asking Defense counsel, "Do you dispute that?" Defense counsel responded, "we will drop that." Arthun emphasizes that Defense counsel also stated that Arthun "would certainly be able to afford *some nominal fee*" (emphasis added), but nonetheless the defense's presentation at the restitution hearing included proposed alternative restitution amounts for the vehicles that were substantial, such as the $3,456.91 it proposed for the Ford Mustang.

¶27 Plain error review is invoked "sparingly, on a case-by-case basis," and we generally will not "put a district court in error for an action in which the appealing party acquiesced

13

or actively participated." *State v. Reim*, 2014 MT 108, ¶¶ 28-29, 374 Mont. 487, 323 P.3d 880.  In addition to dropping the objection and thereafter introducing evidence in support of payment amounts, Arthun made no further objection to the District Court's determinations on the basis of his ability to pay.  Further, the District Court proceeded appropriately, analyzing the Presentence Investigative Report, considering Mr. Arthun's living situation, his debt, his monthly expenses, and his monthly income.  As such, we find that failure to review this matter for plain error would not result in a manifest miscarriage of justice, or leave unsettled the fundamental fairness of the trial.

## CONCLUSION

¶28  We reverse the restitution amount ordered for damage sustained by the Ford Mustang, and remand for entry of an amended judgment reflecting the proper amount of $3,456.91 for that vehicle.  We affirm the remaining judgment.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR

14