FILED

03/19/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0699

DA 22-0699

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 57

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

KAITLYN REBECCA HOLMES,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-21-525C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

    Herman A. Watson, Attorney at Law, Bozeman, Montana

    For Appellee:

    Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

    Audrey Cromwell, Gallatin County Attorney, Eric Kitzmiller, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  January 3, 2024

Decided:  March 19, 2024

Filed:

_____
                  Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Kaitlin Holmes appeals the sentence imposed by the Eighteenth Judicial District Court, Gallatin County, which held Holmes responsible for the disappearance of social security cards from a theft victim's personal belongings, and ordered Holmes to pay restitution equating to the cost of LifeLock memberships for the victim and her children. Holmes admitted to stealing only the victim's credit cards, and therefore contends that restitution related to the missing social security cards is improper. We affirm in part and reverse in part, addressing the following issues:

1. *Did the District Court err by concluding Holmes was criminally liable for damages arising from the missing social security cards?*

2. *Did the District Court erroneously include the cost of long-term LifeLock memberships in the restitution order?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2 Holmes worked as a nurse at a Bozeman medical clinic when, on December 10, 2021, multiple employees reported that credit cards and other personal items had been stolen from their belongings. Records demonstrated that, on the same day the credit cards were stolen, purchases were made using a stolen card in the amounts of $1,007.94 at a nearby REI store and $534.59 at a Bob Ward's store. Holmes had left work early that day without notice. She was subsequently arrested and found in possession of eleven stolen credit cards, a stolen driver's license, and multiple amphetamine pills. After initially being charged with two felonies (Deceptive Practices by Common Scheme and Criminal

2

Possession of Dangerous Drugs) and a misdemeanor (Criminal Trespass to Property), Holmes entered into a plea agreement in which she pled guilty to Count 1 as charged:

> Theft, by Common Scheme, a Felony, in violation of § 45-6-301, MCA, committed during December, 2021, when the defendant, Kaitlin Rebecca Holmes, purposely or knowingly obtained or exerted unauthorized control over property belonging to Samantha Moran, Julie Topping, Brooke Templeton, Tricia Augeri, and Julie Wambecke in Gallatin County, Montana, to wit: credit/debit/gift cards and other items containing personal identifying information and had the purpose to deprive them of the property. The pecuniary loss caused by the theft as part of the common scheme was in excess of $1,500.

¶3 Victim Brooke Templeton claimed that Holmes had stolen her and her three children's social security cards, and requested restitution in the amount of $11,667.74 to cover the cost of a LifeLock membership for each of her children until they reached twenty-one years of age, at a cost of $11,667.74. During the pre-sentence investigation by the Department of Corrections, Holmes explained that, at the time of the theft, she had experienced a "manic episode" as a product of her then-undiagnosed bi-polar disorder, which "manifested in stealing." According to Holmes, she remembered stealing items from the victims' belongings and then going shopping, but did not recall taking any social security cards. Police did not recover any social security cards. Consequently, Holmes opposed assessment of any restitution related to the social security cards.

¶4 At the restitution hearing, defense counsel stated that he "didn't anticipate a restitution request for about $13,000," and objected to being ordered to pay for the Lifelock memberships, arguing, "based on the ruling in [*State v. Barrick*, 2015 MT 94, ¶ 21, 378 Mont. 441, 347 P.3d 241] and restitution law in Montana, as it currently sits, this kind of

anticipated, not-even-purchased expense, that has not been documented, and we have no reason to believe that it's even going to happen, doesn't fall within the restitution."

¶5 In its Sentencing Order, the District Court concluded that, "based on the evidence," Holmes was "responsible for the disappearance of the social security cards." The District Court further concluded that "Templeton is a victim who suffered a pecuniary loss" and that her requested "cost of identity theft protection is reasonably related to obtaining services that are now required due to the loss of the social security cards, and as such, constitute a pecuniary loss to Templeton." Accordingly, the District Court ordered Holmes to pay the amount requested by Templeton, which constituted the bulk of the amount ordered in restitution. The court also imposed a 10% administrative restitution fee in the amount of $1,200. Holmes appeals.

**STANDARD OF REVIEW**

¶6 "Restitution awards are mixed questions of law and fact that this Court reviews *de novo*." *State v. Arthun*, 2023 MT 214, ¶ 11, 414 Mont. 54, 538 P.3d 858. We review a restitution order to determine whether the district court's decision to award restitution was correct, and whether the court's findings regarding the amount awarded were clearly erroneous. *State v. Cleaveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 423 P.3d 1074; *Arthun*, ¶ 11. "A finding of fact is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made." *Cleaveland*, ¶ 7. Evidence is deemed substantial if "a reasonable mind might accept [it] as adequate to

4

support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less than a preponderance." *Arthun*, ¶ 11 (quoting *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841).

## DISCUSSION

¶7    *1. Did the District Court err by concluding that Holmes is criminally liable for damages arising from the missing social security cards?*

¶8    Section 46-18-201(5), MCA, provides that, upon the defendant being found guilty of an offense, if any victim suffered a pecuniary loss, "the sentencing judge shall, as part of the sentence, require payment of full restitution and interest to the victim." Pecuniary loss is defined as:

> (a) all special damages, but not general damages, *substantiated by evidence in the record*, that a person could recover against the offender in a civil action arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured, expenses reasonably incurred in attending court proceedings related to the commission of the offense, and reasonable expenses related to funeral and burial or crematory services;
>
> (b) the full replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct;
>
> (c) future medical expenses that the victim can reasonably be expected to incur as a result of the offender's criminal conduct, including the cost of psychological counseling, therapy, and treatment; and
>
> (d) reasonable out-of-pocket expenses incurred by the victim in filing charges or in cooperating in the investigation and prosecution of the offense.

Section 46-18-243, MCA (emphasis added). The awarding of restitution functions to "engraft a civil remedy onto a criminal statute, creating a procedural shortcut for crime

victims who would be entitled to a civil recovery against the offender." *State v. Brownback*, 2010 MT 96, ¶ 19, 356 Mont. 190, 232 P.3d 385 (internal quotations omitted). "[A] causal relation between the offender's criminal conduct and the pecuniary loss is the touchstone for determining whether a person or entity is a victim entitled to restitution." *Brownback*, ¶ 20.

¶9 Holmes contends the District Court's finding of this "causal relation" between her actions and the disappearance of the Templetons' social security cards was in error because "there is no record evidence that [she] stole or was in possession of the social security cards." Conversely, the State argues that sufficient circumstantial evidence existed to establish the "causal connection" and therefore hold Homes accountable for the missing cards.

¶10 "The sentencing court may find the requisite causal nexus for restitution, between an offender's admitted or adjudicated criminal conduct and the asserted victim loss, upon an admission, by implication from proof of the elements of the charged offense, upon victim affidavits included with a PSI, or upon other evidence presented at or incident to sentencing." *State v. Pierre*, 2020 MT 160, ¶ 13, 400 Mont. 283, 466 P.3d 494. Templeton submitted a restitution request in which she claimed that Holmes took her family's social security cards and this, along with the circumstances surrounding the offense—a disappearance of these cards contemporaneously with the taking of Templeton's and other's credit cards—constituted sufficient evidence for the District Court to find a "causal

connection" between Holmes' crimes and the Templetons' missing cards. *Arthun*, ¶ 11. We affirm this conclusion.

¶11    *2. Did the District Court erroneously include the cost of long-term LifeLock memberships in the restitution order?*

¶12    "[A]n offender's statutory restitution obligation is expressly limited" to loss suffered "as a result of the commission of an offense" which constitutes "special damages . . . *recover[able] against the offender in a civil action* arising out of the facts or events constituting the offender's criminal activities, including without limitation out-of-pocket losses, such as medical expenses, loss of income, expenses reasonably incurred in obtaining ordinary and necessary services that the victim would have performed if not injured" or the "replacement cost of property taken, destroyed, harmed, or otherwise devalued as a result of the offender's criminal conduct." *Pierre*, ¶ 12; § 46-18-243, MCA (emphasis added). Thus, courts look to related civil law precedent, such as tort law, to determine the appropriateness of restitution awards under § 46-18-243(1)(a), MCA. *See Barrick*, ¶ 21.

¶13    Comparing this case to *Barrick*, Holmes argues that the appropriate civil action corollary is a tort claim for conversion, which we applied there. *Barrick*, ¶ 21. Holmes argues that recovery for the Templetons' Lifelock memberships would not be allowable as damages in a claim for conversion, and is therefore inappropriate for restitution. The State answers that *Barrick* is distinguishable because it pertained only to out-of-pocket restitution claims, and instead cites *State v. LaTray*, 2000 MT 262, 302 Mont. 11, 11 P.3d 116, where we held that courts were authorized "to impose restitution for economic loss as a result of the crime." *LaTray*, ¶ 21.

7

¶14 In *Barrick*, the victims sought restitution for lost wages incurred as a result of their "time invested in participating in the prosecution" of the charge against Barrick for killing their dog, including attending court proceedings. *Barrick*, ¶¶ 7, 10, 23. Barrick challenged the award, and our decision turned on whether such lost wages could be recovered as part of a civil tort action for conversion. We concluded that, "based upon the plain wording of [§ 46-18-243(1)(a), MCA] and the authority cited regarding conversion claims," Barrick could not be held liable for the victims' lost wages. *Barrick*, ¶ 24.

¶15 Given the similarities between the crimes in *Barrick* and the present case—both involving the defendant dispossessing the victim of a "belonging"—we agree with Holmes that conversion is an appropriate civil action corollary in accordance with § 46-18-243(1), MCA. Looking to conversion, § 27-1-320(1), MCA, provides in pertinent part:

> (1) The detriment caused by the wrongful conversion of personal property is presumed to be:
>
> (a) the value of the property at the time of its conversion with the interest from that time or, when the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and
>
> (b) a fair compensation for the time and money properly expended in pursuit of the property.

Regarding what constitutes "fair compensation for the time and money properly expended in pursuit of [converted] property," we have held that lost wages and travel expenses incurred through litigation stemming from the conversion are not recoverable, but that lost wages and travel expenses incurred in the process of searching for and recovering the lost

8

property are recoverable. *State v. Patterson*, 2016 MT 289, ¶ 13, 385 Mont. 334, 384 P.3d 92.

¶16    The restitution sought here was not for the value of the lost social security cards, the time and expense necessary to replace them, or to address an "economic loss" or other consequence suffered by the victims because of the theft of the cards. *LaTray*, ¶ 21; § 27-1-320(1), MCA (defining "the detriment caused by the wrongful conversion"). Rather, the restitution was for the cost of subscribing to Lifelock accounts for the victims for many future years. There is no evidence that the Lifelock accounts were required for the "pursuit" of the stolen social security cards or to address any detrimental consequences of their theft. Section 27-1-320(1), MCA. As the District Court noted, the purchase of those accounts was plainly intended to broadly secure "identity theft protection" for the victims. No foundation was laid to demonstrate how this secondary expense, not incurred in the pursuit of the lost property, would be recoverable under tort law. Accordingly, we conclude that the restitution request for the LifeLock accounts was too attenuated to qualify for restitution under the statute.

¶17    Affirmed in part, reversed in part, and remanded for entry of an amended judgment.


/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON

9