FILED

09/03/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0529

DA 22-0529

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 201N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

JASSIE LAYDELL WESTERMAN,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-21-287
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Stephanie Fuller, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  July 31, 2024

Decided:  September 3, 2024

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Jassie Laydell Westerman appeals from the Sentencing Order, Judgment, Bond Exoneration, & Order to Close issued on July 22, 2022, by the Eighth Judicial District Court, Cascade County. The court's judgment, as relevant to this appeal, ordered Westerman to pay $280,000 in restitution for money he stole from Rickey Linafelter's safe. We affirm.

¶3 Linafelter owned two businesses and several rental properties. Because he did not trust banks, he stored large amounts of cash in a safe in his house. After Linafelter's mother died, he was named executor of her estate. In the summer of 2020, Linafelter removed a large amount of cash from her safe, amounting to $160,000, counted the money with his friend and maintenance man George Frederick Simpson, Jr., and then placed the money into his own safe. Later that year, Linafelter counted a separate $120,000 in cash, received as the payment from his mother's life insurance policy, in front of his daughter, Kristin Workman. Workman watched Linafelter put the $120,000 in a separate bag from the $160,000 in the safe.

¶4 On December 28, 2020, Linafelter was admitted to the Benefis ICU with COVID-19. While Linafelter was in the ICU, Westerman stole the majority of the contents

2

of Linafelter's safe, leaving behind only a few random unimportant papers. Workman reported the theft on December 31, 2020. While Linafelter remained in the ICU, Workman and law enforcement attempted to determine how much was stolen from his safe. Linafelter told Workman he thought there was between "$250,000 and $300,000 in cash" in the safe. Linafelter thereafter died from COVID-19 on January 4, 2021.

¶5 On April 20, 2021, Westerman was charged with felony theft for stealing the contents of Linafelter's safe, along with several other charges not relevant to this appeal, in Cause No. CDC-21-287. As part of a global plea agreement resolving numerous charges in two separate criminal dockets, Westerman pled guilty to endangering the welfare of a child, felony theft, and money laundering in CDC-21-287 and to burglary in ADC-21-090, and the State dismissed the remaining charges from those cases.

¶6 The District Court held a change of plea hearing on March 29, 2022, and a sentencing hearing on June 21. At the sentencing hearing, the State sought restitution in the amount of $300,000 for the cash Westerman stole from Linafelter's safe.[1] Westerman contested the $300,000 amount. At the hearing, the District Court heard testimony regarding the contents of the safe from Workman, Simpson, and Westerman. Simpson testified that he helped Linafelter count the cash—$160,000—from Linafelter's mother's safe and watched Linafelter place the money into his safe. Simpson further testified that Linafelter initially deposited the $120,000 from his mother's life insurance policy into the

---

[1] The State also sought, and Westerman stipulated to, restitution in the amount of $7,300 to Gregory Mell, the victim in the money laundering count, and to $3,691.71 to Linafelter's estate for non-cash items—including 27 vehicle titles—Westerman stole from the safe.

3

bank, and that he was there when Linafelter thereafter withdrew the cash to put it into his safe but not there when Linafelter counted the money and placed it into the safe. Workman testified that she was there when Linafelter counted the $120,000 and placed it into a bag and then into the safe. She testified there were "several bags" in the safe when she watched Linafelter put the life insurance money into the safe. Workman also testified that she believed the $300,000 estimate of cash taken from Linafelter's safe was a "conservative estimate[.]" Westerman, meanwhile, testified that he counted the money by himself in a hotel room after he stole it and there was $87,357 in cash and he remembered the amount because "when you never had [] very much money in your life, you get that kind of money you kind of remember the number." In summations after the testimony, the State informed the District Court it "believe[d] that $280,000 would be appropriate" based on the testimony from the hearing. Westerman argued he would stipulate to $87,000 based on his count of the money and noted his ability to pay should be taken into account because he was "currently unemployed, in debt, going to be -- going to prison for some period -- a period of time." Westerman asked the court to "maybe reach the middle ground" between the $87,000 and $280,000 amounts "in terms of the final restitution amount."

¶7     The District Court noted "it's possible that there was $300,000 in that safe and it's possible, there was more than $300,000 in that safe," but that it had to "arrive at a restitution number that I can tie to the testimony that I heard." The court found the testimony of Simpson and Workman relating to the separate $160,000 and $120,000 deposits into the safe credible. The court also found Westerman's testimony regarding his approximately $87,000 count to not be credible because he told the PSI writer he "was really high on

4

drugs and was not in the right state of mind" when he committed the theft. The court noted "I don't think I can rely on your recollection of your count in the hotel room at the same time that you were supposedly so intoxicated that you did something you wouldn't otherwise have done." Ultimately, the District Court determined "$280,000 is firmly supported by the testimony we heard this afternoon and that is the number I'm awarding for the missing cash from the safe." The District Court's written judgment, reflecting the $280,000 restitution amount for the missing cash from Linafelter's safe, was issued on July 22, 2022.

¶8 Westerman appeals only the $280,000 portion of the restitution order. We consider the following restated issue on appeal: whether the District Court erred by imposing $280,000 in restitution.

¶9 Restitution awards create mixed questions of law and fact that we review de novo. *State v. Arthun*, 2023 MT 214, ¶ 11, 414 Mont. 54, 538 P.3d 858 (citing *State v. Lodahl*, 2021 MT 156, ¶ 11, 404 Mont. 362, 491 P.3d 661). "We review a district court's findings of fact regarding the amount of restitution for clear error, noting a finding of fact is only clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if this Court's review of the record leaves the Court with the firm conviction that a mistake has been made." *Arthun*, ¶ 11 (citing *State v. Cleveland*, 2018 MT 199, ¶ 7, 392 Mont. 338, 423 P.3d 1074). "Substantial evidence 'is evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence, but may be somewhat less

than a preponderance.'" *State v. Aragon*, 2014 MT 89, ¶ 9, 374 Mont. 391, 321 P.3d 841 (quoting *State v. Jent*, 2013 MT 93, ¶ 10, 369 Mont. 468, 299 P.3d 332).

¶10 On appeal, Westerman asserts the District Court erred in two respects: (1) by not considering his ability to pay, and (2) by ordering him to pay $280,000 when the loss may have only been $200,000. The State contends Westerman did not adequately raise an ability to pay objection so the District Court was not required to conduct an ability to pay analysis before imposing restitution and that the $280,000 restitution amount is supported by the preponderance of the evidence.

¶11 While "our restitution statutes require courts determine restitution amounts without considering an offender's ability to pay," *Lodahl*, ¶ 23 (citation omitted), an offender may, at any time, petition the sentencing court to adjust or waive payment of restitution if the court determines it would be unjust to require payment as imposed. *Lodahl*, ¶ 24 (citing § 46-18-246, MCA). A sentencing court "must impose the full restitution at sentencing, but it is not precluded from waiving said restitution in the same order." *Lodahl*, ¶ 28. There are four conditions that would permit a sentencing court to adjust or waive restitution:

> (1) the circumstances upon which the court based the imposition of restitution no longer exist; (2) the amount of the victim's pecuniary loss no longer exists; (3) the method or time of payment no longer exists; or (4) that it otherwise would be unjust to require payment as imposed.

*Lodahl*, ¶ 25 (quoting *State v. Erickson*, 2018 MT 9, ¶ 16, 390 Mont. 146, 408 P.3d 1288).

¶12 In *Lodahl*, we reversed a restitution award where a defendant did not specifically file a formal petition to waive restitution under § 46-18-246, MCA, but argued at a

separately-set restitution hearing that it would be unjust to impose the uncontroverted restitution amount due to her dire financial circumstances. *See Lodahl*, ¶¶ 4-8, 26-27, 31-32. Lodahl argued she could not pay restitution and presented evidence at the restitution hearing of her monthly budget, mental health issues, and disabilities. *Lodahl*, ¶¶ 4-7. After the district court imposed the full restitution amount, we reversed, finding the court "ignored the uncontroverted evidence of Lodahl's dire financial situation and then failed to appropriately apply § 46-18-246, MCA, to waive restitution, as unjust under the particular circumstances present" in that case. *Lodahl*, ¶ 27.

¶13 Westerman asserts *Lodahl* applies to his case and the District Court should have waived or modified restitution based upon his ability to pay. Unlike in *Lodahl*, where Lodahl established her dire financial situation by presenting extensive evidence at the restitution hearing and "did not contest the amount of restitution to be ordered, but in essence, asserted restitution should be waived or adjusted as unjust under her particular financial circumstances," *Lodahl*, ¶ 24, here Westerman only made a passing reference to his inability to pay, largely based upon his upcoming prison sentence, as part of an argument seeking the court to "reach the middle ground" of the contested $87,000 and $280,000 restitution amount. Westerman's passing reference to his ability to pay is a far cry from the detailed evidentiary presentation of *Lodahl* and was not "in essence" a petition to modify or waive restitution under § 46-18-246, MCA. We find no error in the District Court not conducting a thorough investigation into Westerman's ability to pay the ordered restitution amount based upon the circumstances presented here. In addition, Westerman

7

retains the right to petition the court to waive or modify restitution pursuant to § 46-18-246, MCA.

¶14 We turn now to Westerman's argument the District Court's $280,000 restitution award was not supported by the evidence. Westerman bases this contention on two statements made to Workman by Linafelter while he was dying of COVID in the ICU. Linafelter apparently told Workman there was either "between $250,000 and $300,000 in cash" or "at least $200,000 . . . and possibly as much as $300,000" in cash in the safe. Based upon the latter statement, Westerman contends there is no support for an award greater than $200,000 in this case. We are not persuaded by this argument.

¶15 When presented with two different restitution estimates, a sentencing court is "required to make a determination as to what amount of restitution was supported by a preponderance of the evidence." *Aragon*, ¶ 16. Here, the District Court found, by a preponderance of the evidence, that $280,000 was the proper amount of restitution for the cash Westerman stole from Linafelter's safe. It based this amount on testimony provided by Simpson and Workman at the sentencing hearing regarding the two separate deposits of $160,000 and $120,000 and to Linafelter's consistent business and money practices. The court noted Linafelter was not likely to dip into the $280,000 from his mother's estate to pay other expenses prior to closing the estate based upon the way he managed his finances. The court specifically found the testimony of Simpson and Workman to be credible and Westerman's testimony he counted only $87,357 to not be credible. "The credibility of witnesses and the weight to be given their testimony are determined by the trier of fact, whose resolution of disputed questions of fact and credibility will not be disturbed on

appeal . . . [] because the trial court is in the best position to judge the credibility and demeanor of witnesses and their testimony." *Aragon*, ¶ 17 (internal quotation marks and citations omitted). Substantial evidence supports the District Court's restitution award and its finding the proper amount of restitution was $280,000 was not clearly erroneous.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JIM RICE